Charles MOCK, Plaintiff–Appellant,

v.

T.G. & Y. STORES CO., an Oklahoma corporation, Household International, Inc., a Delaware corporation, Household Merchandising, Inc., an Ohio corporation, Defendants–Appellees.

Jim L. CLYMER, Plaintiff–Appellant,

v.

T.G. & Y. STORES CO., an Oklahoma corporation, Household International, Inc., a Delaware corporation, Household Merchandising, Inc., an Ohio corporation, Defendants–Appellees.

Gary BAILEY, Dwayne Hope, Jimmy Hope, Patty Hudson, Glenda Morton, Charles Edwards Owens, Victor E. Silva, Kim Louise Souders, Plaintiffs–Appellants,

v.

T.G. & Y. STORES CO., an Oklahoma corporation, Household International, Inc., a Delaware corporation, Household Merchandising, Inc., an Ohio corporation, the General Drivers, Chauffeurs, Helpers, Local Union 886, affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Defendants–Appellees.

Gary BAILEY, Dwayne Hope, Jimmy Hope, Patty Hudson, Glenda Morton, Charles Edwards Owens, Victor E. Silva, Kim Louise Souders, Plaintiffs–Appellants,

v.

T.G. & Y. STORES CO., an Oklahoma corporation, Household International, Inc., a Delaware corporation, Household Merchandising, Inc., an Ohio corporation, Defendants–Appellees,

and

The General Drivers, Chauffeurs, Helpers, Local Union 886, affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Defendants.

Nos. 90–6344, 90–6414, 90–6345, 90–6416, 90–6346, and 90–6415.

United States Court of Appeals, Tenth Circuit.

July 24, 1992.

Larry D. Barnett (Barry R. Davis, Bob Burke and Michael Gassaway, with him on the brief) Oklahoma City, Okl., for plaintiffs-appellants.

Mark G. Flaherty of Husch & Eppenberger, Kansas City, Mo. (Kenneth J. Reilly of McDowell, Rice & Smith, Overland Park, Kansas and Randall A. Breshears of Monnett, Hayes, Bullis, Thompson & Edwards, Oklahoma City, Okl., with him on the brief), for defendants-appellees.

Loren Gibson (George J. McCaffrey, with him on the brief) of Lampkin, McCaffrey & Tawwater, Oklahoma City, Okl., for defendant-appellee Local Union No. 886.

Before ANDERSON, BRORBY, and ALDISERT,[*] Circuit Judges.

STEPHEN H. ANDERSON, Circuit Judge.

This appeal is a consolidation of several cases arising out of an investigation of suspected employee theft and substance abuse at the two Oklahoma warehouses of T.G. & Y. Stores Co., a Delaware corporation engaged in retail merchandising, with its principal place of business in Oklahoma. Plaintiffs, all employees or former employees of T.G. & Y., claim that the investigation was conducted without any factual basis, and in a way which violated federal labor laws, the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18

---

[*] Honorable Ruggero J. Aldisert, United States Court of Appeals for the Third Circuit, sitting by designation.

U.S.C. § 1961 *et seq.*, and various state laws.

Judgment was entered for three plaintiffs, supervisory employees who were terminated after the investigation, pursuant to a Fed.R.Civ.P. 68 offer of judgment, and, through a series of orders and rulings, judgment was ultimately entered for defendants T.G. & Y. and its related corporations, Household International, Inc. and Household Merchandising, Inc. against all remaining plaintiff-employees on all remaining claims. The three plaintiffs who received the Rule 68 judgment were denied prejudgment interest on their awards. These appeals followed, asserting error in certain of the many rulings of the district court.

Defendants filed a motion to dismiss the appeal for lack of jurisdiction as to the three plaintiffs for whom the Rule 68 judgment was entered. Following oral argument to this court, counsel for T.G. & Y. notified the court that T.G. & Y. had filed for protection under the federal bankruptcy laws in the United States Bankruptcy Court for the Southern District of New York. Plaintiffs' appeal was therefore stayed as to T.G. & Y. under 11 U.S.C. § 362. This court then granted the motion of defendants Household International, Inc. and Household Merchandising, Inc. to continue the appeal as to those two defendants.

We affirm the judgments of the district court in favor of defendants Household Merchandising and Household International.

## BACKGROUND

T.G. & Y. was a retail merchandising company which operated hundreds of stores throughout the United States. Household Merchandising is an Ohio corporation authorized to do business in Oklahoma. Household International is a Delaware corporation, and is the parent company of both Household Merchandising and T.G. & Y.

The General Drivers, Chauffeurs, and Helpers Local Union No. 886 (the "Union"), an affiliate of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, was the certified bargaining representative of most of the hourly paid employees of T.G. & Y. Pursuant to the Collective Bargaining Agreement ("CBA") between T.G. & Y. and the Union, T.G. & Y. could discharge any employee for "just cause." Additionally, the CBA contained no limitation on T.G. & Y.'s right to interview or investigate employees, and all "management functions, prerogatives, and rights not expressly delegated, limited, or abridged by the terms" of the CBA were "reserved by the company." Agreement, Articles 13.1, 26, Appendix to Brief of Bailey Plaintiffs Vol. III at 215–16, 230. Finally, the CBA provided for a mandatory, binding and exclusive grievance and arbitration procedure to resolve all disputes between T.G. & Y. and the Union or its members concerning their employment.

Apparently concerned that employees had been stealing merchandise and engaging in other misconduct, T.G. & Y. interviewed approximately 100 employees during the week of April 29, 1985, at one of T.G. & Y.'s warehouses. Some employees were terminated as a result of the interviews and investigation and some were not. The essence of plaintiffs' claim is that they were "wrongfully interrogated, abused and coerced" during the course of the interviews, Brief of Plaintiffs/Appellants at 6, and that the Union conspired with the other defendants to deprive them of their jobs.[1]

There are two groups of plaintiffs/appellants before us, each of whom we treat separately. The first group, plaintiffs Charles Mock, Jim Clymer and Dwayne Hope ("Mock Plaintiffs") were supervisors at T.G. & Y. and were therefore not Union members. They were discharged following their interviews. Mock and Clymer filed separate, but very similar, actions in Oklahoma state court. Both actions were ultimately removed to the United States Dis-

---

1. Although T.G. & Y., the primary actor, along with the Union, in this case is not now a party to this appeal, the claims against its affiliated corporations are based upon the theory that T.G. & Y. acted as the agent of Household International and Household Merchandising.

trict Court for the Western District of Oklahoma.

The other plaintiffs/appellants in this appeal, Gary Bailey, Jimmy Hope, Patty Hudson, Glenda Morton, Charles Owens, Victor Silva, and Kim Louise Souders ("Bailey Plaintiffs"), were all Union members. Owens, Morton and Hudson were interviewed but were not discharged. Bailey, Jimmy Hope, Silva and Souders were interviewed and, after admitting misconduct, were discharged. The Bailey Plaintiffs filed an action in federal district court.[2] The actions of the Mock Plaintiffs and the Bailey Plaintiffs were eventually consolidated in this court.

## I. *Mock Plaintiffs*

We address the Mock Plaintiffs' appeal first. They filed similar actions against defendants T.G. & Y., Household Merchandising, and Household International, alleging violations of RICO and asserting various state law claims. Defendants' motions to dismiss Mock's and Clymer's RICO claims were granted, as was defendants' motion for summary judgment on Hope's RICO claims. Defendants' other motions for summary judgment on many, but not all, of the state law claims were granted.[3]

In September, 1990, T.G. & Y., Household Merchandising, and Household International sent to the Mock Plaintiffs offers to accept judgment in accordance with Rule 68. With the exception of the amount offered, the offers had identical wording, and provided in part as follows:

> Please take notice of our offer to allow judgment to be taken against the defendants *in this case* for the sum of [ ]

with costs accrued to date. This offer is good for ten (10) days, pursuant to Rule 68, F.R.Civ.P. If, within ten (10) days after the service of this offer, you serve written notice on me that this offer is accepted, I will then file the offer and notice of acceptance with the proof of service thereof, in which case the clerk will enter judgment in this case.

Appendix of Plaintiff/Appellant Mock at 94; Appendix of Plaintiff/Appellant Clymer at 110; Defendants/Appellees' Supplemental Appendix at 13 (emphasis added). Each plaintiff thereafter sent a letter accepting the offer "to allow judgment to be taken by the Plaintiff and against the Defendants *in this case....*" Mock Appendix at 95; Clymer Appendix at 79; Defendants/Appellees' Supplemental Appendix at 13 (emphasis added). Plaintiffs then submitted a "Proof of Acceptance of Offer to Allow Judgment and Request for Entry of Judgment" to be filed "in the above styled cause." Exhibit B to Motion of Defendants–Appellees to Dismiss Appeal, with Memorandum in Support. Judgments were therefore entered by the district court on October 4, 1990 in the amounts of $400,-000 plus costs for Mock, $270,000 plus costs for Dwayne Hope, and $85,000 plus costs for Clymer.

Plaintiffs then filed motions to assess pre- and post-judgment interest. Defendants did not dispute plaintiffs' entitlement to post-judgment interest, but did challenge their entitlement to pre-judgment interest. The district court denied their motion for pre-judgment interest, concluding that the "goal [of Rule 68] would be undermined if a party was permitted to subsequently add

---

**2.** Dwayne Hope actually was a plaintiff in the Bailey action. He was the only supervisor, and therefore non-Union member, in the Bailey action. Because his appeal raises issues identical to the other two supervisors, Mock and Clymer, we treat his appeal along with Mock and Clymer. Of the original 51 Bailey plaintiffs, only the seven appellants and Dwayne Hope remain, the other 43 having settled their cases and filed dismissals with prejudice.

**3.** With respect to plaintiffs Mock and Dwayne Hope, defendants' motion for summary judgment on their breach of contract claims were granted, as was defendants' motion for judg-

ment on the pleadings on plaintiffs' claims for wrongful discharge and breach of implied covenant of good faith and fair dealing. With respect to all three plaintiffs, defendants' summary judgment motion on plaintiffs' tortious interference with contract claim was granted. With respect to plaintiff Clymer, defendant's motion for partial summary judgment on his claims of breach of contract, breach of implied covenant of good faith and fair dealing and abusive discharge were granted. Each plaintiff was left with several state law claims designated for trial.

pre-judgment interest to the sum contained in an offer of judgment."

Plaintiffs Mock and Clymer attempt to appeal from the district court's earlier grant of defendants' motion for partial summary judgment on the pleadings as to their claims for wrongful discharge and from the denial of pre-judgment interest on their judgments. Dwayne Hope attempts to appeal from: (1) the grant of defendants' motion for partial judgment on the pleadings as to his claims for wrongful discharge and breach of the implied covenant of good faith and fair dealing; (2) the grant of defendants' motion to dismiss or alternatively for summary judgment as to his RICO claim; (3) the grant of defendants' motions for summary judgment on his claims for breach of contract and for tortious interference with contract relations and limiting his claims to intentional infliction of emotional distress, defamation, invasion of privacy, false light portrayal, fraudulent misrepresentation, and conversion; and (4) the denial of his claim for pre-judgment interest.

Defendants have filed a motion to dismiss the appeals of the Mock Plaintiffs for lack of jurisdiction, and seek costs and damages under Fed.R.App.P. 38 for bringing a frivolous appeal. They argue that

the prior rulings of the district court, as well as the order denying pre-judgment interest, merged with the final consent judgment, and no appeal can be taken from a consent judgment entered without reservation of the right to make any appeal therefrom. We agree.

 Plaintiffs essentially concede that an appeal ordinarily may not be taken from a consent judgment.[4] That is the well-accepted rule. "It is uncontested that a party to a consent judgment is thereby deemed to waive any objections it has to matters within the scope of the judgment." *Coughlin v. Regan,* 768 F.2d 468, 469–70 (1st Cir.1985); *see also Nashville, Chattanooga & St. Louis Ry. v. United States,* 113 U.S. 261, 5 S.Ct. 460, 28 L.Ed. 971 (1885), *cited with approval in NLRB v. OCHOA Fertilizer Corp.,* 368 U.S. 318, 323, 82 S.Ct. 344, 348, 7 L.Ed.2d 312 (1961); *Pacific R.R. v. Ketchum,* 101 U.S. 289, 295, 25 L.Ed. 932 (1879); *Mallory v. Eyrich,* 922 F.2d 1273, 1280 (6th Cir.1991); *Dorse v. Armstrong World Industries, Inc.,* 798 F.2d 1372, 1375 (11th Cir.1986); 15A C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3902, at 91–93 (1992); 9 J. Moore, B. Ward & J. Lucas, Moore's Federal Practice ¶ 203.06 (1992).[5]

---

4. Plaintiff Dwayne Hope conceded in his response to defendants' motion to dismiss his appeal that he:

"is *not* contesting the judgment entered on his behalf on October 4, 1990 [the consent judgment]; instead, he *is* contesting the *judgment entered on behalf of Defendants–Appellees* on January 21, 1988, the *judgment entered on behalf of Defendants–Appellees* on July 25, 1988, *the judgment entered on behalf of Defendants–Appellees* on September 7, 1988, and, *the judgment entered on behalf of Defendants–Appellees* on October 28, 1988."

Response to Motion of Defendants–Appellees to Dismiss Appeal of Dwayne Hope, With Memorandum in Support at 4.

5. There are exceptions to the general rule that a party may not appeal from a consent judgment, in cases where lack of actual consent, fraud in obtaining consent, lack of federal jurisdiction, or mistake are shown. *Swift & Co. v. United States,* 276 U.S. 311, 324, 48 S.Ct. 311, 314, 72 L.Ed. 587 (1928). None of those exceptions are relevant here.

Despite defendants' characterization of the matter as a jurisdictional matter, we agree with the view expressed in *Coughlin* and elsewhere

that the appealability of a consent judgment is more properly subject to a waiver-of-error analysis.

"Parties who have consented to entry of a judgment are at times said to lack standing to appeal, and occasionally appeals from consent judgments are simply dismissed. The true principle at work, however, is one of waiver or consent; the appropriate disposition, if the appeal represents no more than a retroactive attempt to undo consent properly given, is affirmance rather than dismissal. As the Supreme Court said long ago:

'If, when the case gets here, it appears that the decree appealed from was assented to by the appellant, we cannot consider any errors that may be assigned which were in law waived by the consent, but we must still receive and decide the case. If all the errors complained of come within the waiver, the decree below will be affirmed, but only after hearing.'"

15 C. Miller, A. Miller & E. Cooper, Federal Practice and Procedure § 3902, at 91–92 (1992) (quoting *Pacific R.R. v. Ketchum,* 101 U.S. 289, 295, 25 L.Ed. 932 (1879)); *see also Shores v. Sklar,* 885 F.2d 760, 764 n. 7 (11th Cir.1989) (en

Plaintiffs assert they are *not* appealing from the consent judgments; rather they are appealing from the order denying pre-judgment interest and from the prior rulings of the court which, they assert, were not included within the consent judgment. Thus, the threshold dispositive question is whether those orders and rulings were merged with or are an integral part of the consent judgments, such that they are subject to the general rule of non-appealability. We hold that they are.

The earlier rulings dismissing parts of plaintiffs' actions were undeniably interlocutory orders. *See* 28 U.S.C. §§ 1291, 1292; *Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 546, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528 (1949). The general rule is that interlocutory rulings merge into the final judgment of the court and become appealable only once a final judgment has been entered.[6] Accordingly, they became merged with the consent judgments. *See Shores v. Sklar,* 885 F.2d 760, 763 (11th Cir.1989) (en banc), *cert. denied,* 493 U.S. 1045, 110 S.Ct. 843, 107 L.Ed.2d 838 (1990).

While some courts have acknowledged that a party may appeal from a consent judgment where the party has expressly reserved the right to appeal, the consent judgment here contains no such reservation. *See, e.g., Shores v. Sklar,* 885 F.2d 760, 763 (11th Cir.1989) (en banc), *cert. denied,* 493 U.S. 1045, 110 S.Ct. 843, 107 L.Ed.2d 838 (1990); *Dorse v. Armstrong World Indus., Inc.,* 798 F.2d 1372, 1375 (11th Cir.1986); *Coughlin v. Regan,* 768 F.2d 468, 470 (1st Cir.1985); *Cohen v. Virginia Elec. & Power Co.,* 788 F.2d 247, 249 (4th Cir.1986). Indeed, by their very terms the consent judgments dismissed the entire

case of each plaintiff with absolutely no indication that particular claims would be appealed. *See Shores,* 885 F.2d at 763 ("Shores consented to entry of judgment 'in this action' without making any provision for appeal of any of the claims at issue.") Accordingly, we hold that plaintiffs Mock, Clymer and Dwayne Hope consented to entry of judgment in the entire case, including the claims which were the subject of the prior rulings plaintiffs now seek to appeal. *Id.; see also* 7 J. Moore, J. Lucas & K. Sinclair, Jr., Moore's Federal Practice ¶ 68.05, at 68–14 ("The acceptance of a Rule 68 offer, and the subsequent entry of judgment, bars a plaintiff from appealing prior interlocutory orders.").

■ We similarly affirm the district court's refusal to subsequently add pre-judgment interest to the amount contained in the consent judgments. Plaintiffs argue that Oklahoma law governs their entitlement to pre-judgment interest in this diversity case, and that under Oklahoma law, they would get such interest. In our view, that is irrelevant. The interpretation and application of Rule 68 is a matter of federal law. The question is whether a Rule 68 consent judgment for a specific sum, with no mention of pre-judgment interest, may be altered by a plaintiff's subsequent motion for pre-judgment interest. We hold that a Rule 68 consent judgment for a sum certain must, absent indication otherwise, be deemed to include pre-judgment interest.[7] To hold otherwise would undermine the purpose of Rule 68. We therefore affirm the court's rejection of plaintiffs' motion. We also deny defendants' motion to award costs and damages to defendants under Fed.R.App.P. 38.

---

banc), *cert. denied,* 493 U.S. 1045, 110 S.Ct. 843, 107 L.Ed.2d 838 (1990); *Dorse v. Armstrong World Indus., Inc.,* 798 F.2d at 1375; *Hunt v. Bankers Trust Co.,* 799 F.2d 1060, 1066 (5th Cir.1986).

6. There is no argument here that these prior rulings were collateral orders appealable under the collateral order doctrine of *Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949).

7. This is consistent with the rule in our circuit that a decision as to whether pre-judgment in-

terest should be awarded "is an act which serves to remedy the injury giving rise to the underlying action and in that sense is part of the merits of the court's decision." *McNickle v. Bankers Life & Cas. Co.,* 888 F.2d 678, 682 (10th Cir. 1989); *see also Osterneck v. Ernst & Whitney,* 489 U.S. 169, 175, 109 S.Ct. 987, 991, 103 L.Ed.2d 146 (1989) ("we have repeatedly stated that prejudgment interest 'is an element of [plaintiff's] complete compensation.' ") (quoting *West Virginia v. United States,* 479 U.S. 305, 310, and n. 2, 107 S.Ct. 702, 706, and n. 2, 93 L.Ed.2d 639 (1987)).

## II. *Bailey Plaintiffs*

We turn now to the claims of the Bailey Plaintiffs. The Bailey Plaintiffs were all Union members. Plaintiffs Owens, Hudson and Morton who were interviewed but not discharged, never asked the Union to pursue any action based on the manner of the interviews or investigation. Morton pursued a grievance relating to overtime pay during the week of the investigation. Plaintiffs Bailey, J. Hope, Silva and Souders were interviewed, signed written statements indicating they had engaged in misconduct, and were discharged. They each filed grievances with the Union, which, in accordance with the CBA, were presented to a "Pre–Arbitration Committee." The Committee took testimony from the discharged employees, and then decided not to recommend the grievances for arbitration.

The Bailey Plaintiffs, along with a number of other employees, most of whom were Union members, filed an action against T.G. & Y., Household Merchandising, Household International and the Union in the federal district court for the Western District of Oklahoma, alleging violations of RICO, section 301 of the Labor Management Relations Act ("LMRA"), and asserting various state law claims. Between January, 1988 and August, 1988, the district court entered the following orders in favor of defendants: (1) granted judgment on the pleadings on plaintiffs' claims of wrongful discharge and breach of implied covenant of good faith and fair dealing; (2) granted defendants' motion for summary judgment on plaintiffs' RICO claim; (3) granted defendants' motion for summary judgment for the Union as to all claims against it; and (4) granted defendants' motion for summary judgment as to all remaining claims against defendants, including the LMRA § 301 claims.

The Bailey Plaintiffs argue that the district court erred in granting summary judgment to the Union and to T.G. & Y., Household Merchandising, and Household International, holding that their state law claims were preempted by section 301 and concluding that they failed to establish a section 301 violation. They also claim error in

the district court's order granting to defendants T.G. & Y., Household Merchandising, and Household International, partial judgment on the pleadings as to their claims for wrongful discharge and breach of an implied covenant of good faith and fair dealing.

■ We review *de novo* the grant or denial of a motion for summary judgment, applying the same legal standard used by the district court under Fed.R.Civ.P. 56(c). *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir.1990); *Lucas v. Mountain States Tel. & Tel.*, 909 F.2d 419, 420 (10th Cir.1990) (per curiam); *Barnson v. United States*, 816 F.2d 549, 552 (10th Cir.), *cert. denied*, 484 U.S. 896, 108 S.Ct. 229, 98 L.Ed.2d 188 (1987); *Osgood v. State Farm Mut. Auto Ins. Co.*, 848 F.2d 141, 143 (10th Cir.1988). Summary judgment is appropriately granted when there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law. *Russillo v. Scarborough*, 935 F.2d 1167, 1170 (10th Cir.1991); *Johnson v. Beatrice Foods Co.*, 921 F.2d 1015, 1018 (10th Cir.1990). We view the record in the light most favorable to the non-moving party. *Deepwater Investments, Ltd. v. Jackson Hole Ski Corp.*, 938 F.2d 1105, 1110 (10th Cir.1991). However, "the nonmoving party may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Applied Genetics*, 912 F.2d at 1241 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)).

■ A motion for judgment on the pleadings under Fed.R.Civ.P. 12(c) is treated as a motion to dismiss under Fed.R.Civ.P. 12(b)(6). *McHenry v. Utah Valley Hosp.*, 927 F.2d 1125, 1126 (10th Cir.1991) *cert. denied*, —— U.S. ——, 112 S.Ct. 263, 116 L.Ed.2d 217 (1991) (quoting *Bishop v. Federal Intermediate Credit Bank of Wichita*, 908 F.2d 658, 663 (10th Cir.1990)), *cert. denied*, —— U.S. ——, 112 S.Ct. 263, 116 L.Ed.2d 217 (1991). We review the sufficiency of a complaint *de novo*, and will

uphold dismissal "only when it appears that the plaintiff can prove no set of facts in support of the claims that would entitle the plaintiff to relief." *Jacobs, Visconsi & Jacobs Co. v. City of Lawrence,* 927 F.2d 1111, 1115 (10th Cir.1991). We must accept all well-pleaded allegations in the complaint as true and "construe them in the light most favorable to the plaintiff." *Williams v. Meese,* 926 F.2d 994, 997 (10th Cir.1991).

Section 301(a) of the LMRA provides:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

Section 301 "not only provides federal-court jurisdiction over controversies involving collective-bargaining agreements, but also 'authorizes federal courts to fashion a body of federal law for the enforcement of these collective bargaining agreements.'" *Lingle v. Norge Division of Magic Chef, Inc.,* 486 U.S. 399, 403, 108 S.Ct. 1877, 1880, 100 L.Ed.2d 410 (1988) (quoting *Textile Workers v. Lincoln Mills,* 353 U.S. 448, 451, 77 S.Ct. 912, 915, 1 L.Ed.2d 972 (1957)).

### A. Preemption of State Law Claims

■ We first consider whether the district court correctly held that the Bailey Plaintiffs' state law tort claims were preempted by section 301 of the LMRA. While neither the complaint nor plaintiffs' briefs provide much assistance in determining this question, it appears that the state law claims held preempted were claims for intentional infliction of emotional distress, fraudulent misrepresentation, invasion of privacy, false light portrayal, defamation, false imprisonment, and conversion. We affirm. Although it appears that the district court did not hold the wrongful discharge and breach of implied covenant of good faith and fair dealing claims preempted, we hold that they too are preempted by section 301.

Under the LMRA, "if the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement" the state-law claim is preempted. *Lingle v. Norge Division of Magic Chef, Inc.,* 486 U.S. 399, 405–06, 108 S.Ct. 1877, 1881–84, 100 L.Ed.2d 410 (1988); *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 208–10, 105 S.Ct. 1904, 1909–11, 85 L.Ed.2d 206 (1985); *Johnson v. Beatrice Foods Co.,* 921 F.2d 1015, 1018–20 (10th Cir.1990); *Marshall v. TRW, Inc., Reda Pump Division,* 900 F.2d 1517, 1520–22 (10th Cir.1990); *United Assoc. of Journeymen and Apprentices, Local Number 57 v. Bechtel Power Corp.,* 834 F.2d 884, 887–89 (10th Cir.1987) *cert. denied,* 486 U.S. 1055, 108 S.Ct. 2822, 100 L.Ed.2d 923 (1988).

In *Lingle,* where the Supreme Court held the particular state-law claim was *not* preempted by section 301, the plaintiff alleged that she had been discharged in retaliation for filing a workers' compensation claim, in violation of applicable state workers compensation laws. Her employer claimed she had been discharged for "just cause" under the CBA. The Supreme Court held her state-law retaliatory discharge claim was "independent" of the CBA, and could therefore be resolved without reference to the CBA: it involved "purely factual questions pertain[ing] to the conduct of the employee and the conduct and motivation of the employer." *Lingle,* 486 U.S. at 407, 108 S.Ct. at 1882. The resolution of such a claim "does not require construing the collective-bargaining agreement," *Lingle,* 486 U.S. at 407, 108 S.Ct. at 1882, even if "the state-law analysis might well involve attention to the same factual considerations as the contractual determination of whether Lingle was fired for just cause." *Id.* at 408, 108 S.Ct. at 1883. This court reached the identical conclusion in *Marshall v. TRW, Inc., Reda Pump Division,* 900 F.2d 1517 (10th Cir. 1990), holding that a state-law retaliatory discharge claim was not pre-empted by section 301. *See also Davies v. American Airlines, Inc.,* 971 F.2d 463, 465 (10th Cir. 1992) ("interpretation of the 'just cause'

provision of a CBA is not necessary to resolve a retaliatory discharge suit.").

This case is not, however, a retaliatory discharge suit. All of the Bailey Plaintiffs' state law claims arose out of conduct alleged to have occurred during the course of an investigation by T.G. & Y. This court has specifically held that claims for intentional infliction of emotional distress are preempted by section 301. *Johnson v. Beatrice Foods Co.*, 921 F.2d at 1020. We explained as follows:

"We hold that Johnson's claim for intentional infliction of emotional distress closely parallels the bad faith claim in *Allis–Chalmers*, and is thus pre-empted by ¶ 301. Each of Johnson's allegations directly relates to either explicit or implied rights derived from the CBA, just as the bad faith tort claim in *Allis–Chalmers* did. Johnson's complaint pertains to the manner in which discipline was carried out, just as the employee in *Allis–Chalmers* complained about the manner in which his insurance claim was handled. Furthermore, Johnson could have used the CBA grievance procedure for any of the allegations in his complaint since all the allegations involved either a suspension, discharge or work-related dispute."

*Id.* We distinguished *Lingle* and *Marshall* on the basis that "[t]he Illinois Worker's Compensation Act creates an independent state cause of action because it creates an independent method of review" whereas "Oklahoma's tort for intentional infliction of emotional distress does not create an independent method of measuring when an employer's work-related conduct is outrageous." *Id.* at 1021.[8]

*Johnson*'s broad rationale dictates the conclusion in this case that plaintiffs' state tort law claims are preempted by section 301. As we have previously noted, "[p]laintiffs ... often [attempt] to avoid federal jurisdiction under § 301 by framing their complaints in terms of such diverse state law theories as wrongful discharge,

intentional infliction of emotional distress, conspiracy, and misrepresentation." *United Assoc. of Journeymen and Apprentices of the Plumbing and Pipefitting Industry v. Bechtel Power Corp.*, 834 F.2d 884, 887–88 (10th Cir.1987), *cert. denied*, 486 U.S. 1055, 108 S.Ct. 2822, 100 L.Ed.2d 923 (1988). We rejected that practice, stating that "federal courts look beyond the allegations of the complaint ... to determine whether the wrong complained of actually arises in some manner from a breach of the defendants' obligations under a collective bargaining agreement." *Id.* at 888. Plaintiffs' claims all arose out of the manner in which T.G. & Y. conducted its investigation of suspected employee misconduct, and the way in which it terminated certain employees. Under the CBA, T.G. & Y. could conduct such an investigation and could terminate any employee for "just cause." An analysis of whether T.G. & Y. acted properly or not will inevitably require an analysis of what the CBA permitted. Further, none of the Oklahoma laws invoked "create an independent method of measuring when an employer's work-related conduct is outrageous." *Johnson*, 921 F.2d at 1021. We therefore affirm the district court's conclusion that the Bailey Plaintiffs' state law claims, including the wrongful discharge and breach of an implied covenant of good faith and fair dealing, are preempted by section 301. We turn now to the question of whether the court properly found no section 301 violation.

**B. Section 301**

■ Section 301 suits such as this one, where employees charge that an employer has breached a collective bargaining agreement and that the union has breached its duty of fair representation, are called "hybrid suits." *Reed v. United Transportation Union*, 488 U.S. 319, 328, 109 S.Ct. 621, 627, 102 L.Ed.2d 665 (1989); *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 165, 103 S.Ct. 2281, 2291, 76 L.Ed.2d 476 (1983); *Lucas v. Mountain States Tel. & Tel.*, 909 F.2d 419,

**8.** In reaching our conclusion in *Johnson*, we noted that "other circuits have reached varying results when applying the *Allis–Chalmers* and *Lingle* holdings to state tort claims for intentional infliction of emotional distress." *See Johnson*, 921 F.2d at 1021–22.

420 (10th Cir.1990) (per curiam); *Barnard v. Commercial Carriers, Inc.,* 863 F.2d 694, 696 (10th Cir.1988). An essential element of such a suit is that the plaintiffs establish the failure of the union to fulfill its duty of fair representation. *See Del-Costello,* 462 U.S. at 164–65, 103 S.Ct. at 2290–91; *Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry,* 494 U.S. 558, 564, 110 S.Ct. 1339, 1344, 108 L.Ed.2d 519 (1990); *Hines v. Anchor Motor Freight Co.,* 424 U.S. 554, 570–71, 96 S.Ct. 1048, 1059–60, 47 L.Ed.2d 231 (1976); *Talbot v. Matthews Distributing Co.,* 961 F.2d 654, 663 (7th Cir.1992); *Bennett v. Local Union No. 66,* 958 F.2d 1429 (7th Cir.1991). The district court granted defendants' T.G. & Y., Household Merchandising, and Household International's motions, as well as the Union's motion,[9] for summary judgment on the section 301 claims, holding that they simply failed to show that the Union had breached its duty of fair representation. We agree.

■ To establish that the Union breached its duty of fair representation, plaintiffs must show that the Union's actions were arbitrary, discriminatory or in bad faith. *Vaca v. Sipes,* 386 U.S. 171, 190, 87 S.Ct. 903, 916–17, 17 L.Ed.2d 842 (1967); *United Food and Commercial Workers, Local Union No. 7R v. Safeway Stores, Inc.,* 889 F.2d 940, 945 (10th Cir.1989). Bad faith requires a showing of fraud, deceitful action or dishonest action. *Motor Coach Employees v. Lockridge,* 403 U.S. 274, 299, 91 S.Ct. 1909, 1924, 29 L.Ed.2d 473 (1971). Simply showing that the Union did not represent them as vigorously as it could have

does not establish a section 301 violation. We affirm the district court's conclusion that the undisputed facts establish that no section 301 violation occurred.[10]

### CONCLUSION

For the foregoing reasons, the judgments of the district court in favor of defendants are AFFIRMED.

---

9. Defendants argued briefly in their written submissions, and more vociferously at oral argument, that the Union is not properly before this court on appeal because plaintiffs failed to list the Union by name in the notice of appeal. *See Torres v. Oakland Scavenger Co.,* 487 U.S. 312, 108 S.Ct. 2405, 101 L.Ed.2d 285 (1988). Because the Union is an appellee, the *Torres* rule requiring that each appellant be listed by name in the notice of appeal does not deprive us of jurisdiction over the Union. *Torres* is premised on the requirements of Fed.R.App.P. 3(c), which specifies only that appellants be named. Appellees need not be so named. *See Chathas v. Smith,* 884 F.2d 980, 986 n. 3 (7th Cir.1989), *cert. de-*

*nied,* 493 U.S. 1095, 110 S.Ct. 1169, 107 L.Ed.2d 1071 (1990); *Appeal of District of Columbia Nurses' Ass'n.,* 854 F.2d 1448, 1450 (D.C.Cir. 1988) (per curiam), *cert. denied,* 491 U.S. 906, 109 S.Ct. 3189, 105 L.Ed.2d 697 (1989).

10. Moreover, we agree with defendants that plaintiffs' recitation of allegedly "undisputed facts", without accompanying specific citations to the record on appeal establishing these facts as "undisputed" and without any attempt to link broad allegations about conduct involving "plaintiffs" or "employees" with the *particular* plaintiffs who are appellants before this court, is wholly insufficient to demonstrate that the district court erred.