**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 2 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

THE DELTA WESTERN GROUP, LLC,

      Plaintiff-Appellant/Cross-Appellee,

DANIEL B. McCAULEY; DONALD E.
LITTLE,

      Plaintiffs,

v.

RUTH E. FERTEL, INC.; RUTH'S CHRIS
STEAK HOUSES,

      Defendants-Appellees/Cross-
Appellants.

Nos. 03-4103 & 03-4112
(D. Utah)
(D.Ct. No. 2:00-CV-45-TC)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, **MURPHY**, and **O'BRIEN**, Circuit Judges.

After examining the briefs and appellate record, this panel determined

unanimously that oral argument would not materially assist the determination of

---

[*] This order and judgment is not binding precedent except under the doctrines of
law of the case, *res judicata* and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

this appeal. *See* FED. R. APP. P. 34(a)(2); 10TH CIR. R. 34.1(G). Therefore, on January 3, 2005, we ordered the case submitted without oral argument.

This intellectual property dispute involves the registered service mark "U.S. Prime." Appellant/Cross-Appellee Delta Western Group, LLC (DWG)[1] challenges the district court's permanent injunction enjoining DWG from using the mark. We affirm.

## I. Background

In December 1999, DWG opened its restaurant, U.S. Prime Steak House, in Park City, Utah. Shortly thereafter, Ruth U. Fertel, Inc. ("RUFI"), owner of the Ruth's Chris Steak House chain, notified DWG that it was infringing on RUFI's mark, "U.S. Prime," and threatened a lawsuit unless DWG responded in writing that it would no longer use the mark. In response, DWG initiated this action against RUFI challenging the validity of RUFI's "U.S. Prime" service mark under the Federal Trade Commission Act and the Lanham Trademark Act of 1946 (Lanham Act). RUFI counter-claimed, alleging DWG's use of the term "U.S. Prime" in its restaurant's name and on its products infringed on RUFI's registered mark in violation of the Lanham Act.

---

[1] Daniel B. McCauley and Donald E. Little were business partners in DWG and individually named parties when this case was initiated in the district court; neither is named in this appeal. Mr. Little has also acted as counsel for DWG throughout the district and appellate court proceedings.

RUFI filed a motion to dismiss DWG's complaint for failure to state a claim upon which relief could be granted. The motion was granted.[2] RUFI then filed a motion for a preliminary injunction;[3] a hearing was held on September 12 and 13, 2000. On September 27, 2000, the district court entered an order granting a preliminary injunction to RUFI enjoining DWG from using the mark "U.S. Prime" on its restaurant exterior, menus, products, packaging, advertisements and other materials. The district court concluded, in relevant part, RUFI's mark had acquired secondary meaning and declined to address DWG's unclean hands defense.

DWG appealed, challenging *inter alia* the district court's conclusions concerning secondary meaning and the unclean hands defense. On appeal, in an unpublished decision, we affirmed the district court's grant of a preliminary injunction. *See Delta Western Group, LLC v. Ruth's Chris Steak Houses*, 24 Fed. Appx. 957 (10th Cir. 2001). RUFI then filed a motion for summary judgment

---

[2] In response to RUFI's motion to dismiss, DWG filed two motions to amend its complaint; both were denied. The district court granted the motion to dismiss finding in relevant part: (1) DWG's claim under § 43(a) of the Lanham Act (15 U.S.C. § 1125(a)) was barred because RUFI and DWG were not competitors and therefore DWG did not having standing under that statute; and (2) DWG's claim under the Utah Consumer Sales Practice Act for deception and misrepresentation was not stated with the required particularity. DWG conceded its original complaint should be dismissed for failure to state a claim.

[3] RUFI had earlier filed a motion for a temporary restraining order which was denied.

requesting the preliminary injunction become permanent and seeking its attorneys' fees. DWG never responded to the motion. However, when RUFI advised the court of DWG's failure to respond to the pending motion, DWG filed a motion to dismiss, claiming further proceedings were moot because it had sold its Park City restaurant to a third-party and sought its attorney fees. RUFI opposed the motion to dismiss, asserting DWG's claim that the case was moot was belied by DWG's conduct, specifically, its (1) express reservation of its right to use "U.S. Prime" in the documents related to the sale of its Park City restaurant, (2) continued maintenance of a domain name registration for "usprimesteakhouse.com," and (3) continued participation in cancellation proceedings against RUFI's mark before the United States Patent and Trademark Office ("PTO").

On April 30, 2003, the district court held a hearing on the parties' pending motions at which Little appeared by telephone on behalf of DWG. At the hearing (hereinafter referred to as the permanent injunction hearing), the district court found the case was not mooted by DWG's sale of its restaurant. It concluded the evidence presented by RUFI demonstrated DWG's intent to continue to use the term "U.S. Prime." It also stated there appeared to be no evidence presented by DWG distinct from that presented at the preliminary injunction hearing but for a survey which was not persuasive. Therefore, the district court offered DWG

thirty days in which to point out what new evidence existed.  However, it warned DWG that if it merely repeated arguments previously made it might award RUFI its attorneys' fees.

In response, Little stated:

> Your Honor, you're making yourself real clear.  And to show my intent never to use this again . . . if there's some way that we could fashion a stipulation, I'm willing--myself or my other two partners have no inclination whatsoever to ever use this again at all.  And if we can fashion some kind of stipulated judgment between the two parties, we can call this a closed deal and waste no more resources.

(Preliminary Injunction Hearing Tr. at 14.)  After further discussion, the parties agreed to the district court issuing an order making the preliminary injunction permanent.  Accordingly, on April 30, 2003, the district court issued a permanent injunction to RUFI.  As to attorneys' fees, the district court concluded it was not an exceptional case justifying an award of fees to either party.

On May 8, 2003, DWG filed the present appeal challenging the permanent injunction.  DWG maintains the district court failed to consider new evidence presented prior to the permanent injunction hearing demonstrating RUFI's unclean hands and, once again, claims the district court erred in finding secondary meaning in RUFI's mark.  In addition to its answer brief, RUFI has filed: (1) a Motion for Summary Disposition seeking dismissal of DWG's appeal based on its stipulation to the permanent injunction; (2) a Motion for Sanctions due to DWG's filing of a frivolous appeal; and (3) a conditional appeal of the district court's

denial of attorneys' fees in the event we determine DWG can appeal the permanent injunction. DWG responded with: (1) an opposition to the award of sanctions/attorneys' fees; (2) a motion for leave of court to file a supplemental appendix (which RUFI opposes); and (3) a cross-motion for an award of sanctions/attorneys' fees to DWG. Because RUFI correctly argues that DWG waived its right to file the current appeal, we need not revisit the remaining substantive issues raised by DWG.

## II. Discussion

### A. Consent Judgment

It is a well-accepted rule that a party to a consent judgment waives any objection to matters within the scope of the judgment. *Mock v. T.G. & Y. Stores Co.,* 971 F.2d 522, 526 (10th Cir. 1992) (collecting cases). "[A] decree, which appears by the record to have been rendered by consent is always affirmed, without considering the merits of the cause." *Swift & Co. v. United States,* 276 U.S. 311, 324 (1928) (quoting *Nashville, Chattanooga & St. Louis Ry. Co. v. United States,* 113 U.S. 261, 266 (1885)). In the absence of a reservation of the right to appeal a consent decree, there are only three exceptions to this general rule. *Mock*, 971 F.2d at 527. A party may appeal a consent judgment where he can establish he did not actually consent, where he can show fraud in the procurement, or where the court entering the judgment lacked subject matter

-6-

jurisdiction over the case. *Swift,* 276 U.S. at 324. None of these exceptions apply.

DWG's initial contention is that the stipulation was not voluntary. It argues that due to the confusing nature of the court's order vacating the proceedings, Little was required to participate at the preliminary injunction hearing on a cell phone from the back of a taxicab where Little could only intermittently hear the proceedings until he reached his hotel and a land-line telephone.[4] Further, DWG contends Little was required to participate without the assistance of documents and agreed to stipulate only under the threat of sanctions by the district court.

These arguments are singularly without merit. It was Little himself who first suggested a stipulation. Moreover, he never indicated to the district court that he could not hear the proceedings and, in fact, informed the district court prior to the stipulation that he had switched to a land line telephone. Although he

---

[4] The reason Little was not present in person was based on his belief that the hearing had been vacated by court order. That order stated:

> PLEASE TAKE NOTICE that proceedings in this case have been vacated from hearing before Honorable Tena Campbell:
>
> TYPE OF PROCEEDING: Court vacates all dates set in scheduling order pending resolution of dispositive motions.

-7-

bemoans his presence in another state, necessarily proceeding by memory alone, he never requested a continuance. We must stretch to find sympathy for his predicament since his location was based on his own failure to carefully read the district court's order vacating all dates *set forth in the scheduling order*, not the actual hearing. Nevertheless, the mere fact Little appeared telephonically does not seem to have affected his ability to voluntarily enter into the stipulation.

The argument that the district court coerced agreement through the threat of sanctions borders on offensive. The district court willingly provided DWG with the option of an additional thirty days to submit and present argument on what it believed to be new evidence. Although the district court warned DWG that it would seriously consider awarding attorneys' fees to RUFI if DWG repeated previously made arguments, there is nothing improper in a district court's admonishment to a party that it will not tolerate certain behavior and advising of possible consequences for disregard of the warning.

DWG next asserts that, if the stipulation is considered voluntary, the stipulation is limited solely to an agreement that it would not use the term "U.S Prime" in the future, reserving the disposition of the unclean hands or secondary meaning issues. It also maintains its request at the hearing for several days to review the permanent injunction order coupled with its immediate notice of appeal indicates it had changed its position. DWG further complains the district

court did not instruct DWG that it was waiving its right to appeal by stipulating to the permanent injunction.

"[T]he scope of a consent decree must be discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it." *United States v. Armour & Co.,* 402 U.S. 673, 681 (1971). Our review of the transcript of the hearing and the subsequent order granting a permanent injunction reveals DWG voluntarily consented to the permanent injunction and all issues were clearly included in the stipulated judgment.

A review of the transcript is revealing. Following its specific offer of an additional thirty days to identify new evidence, the district court stated, "If you believe that, you agree that my order of preliminary injunction may simply become final, that is another option you have." (Preliminary Injunction Hearing Tr. at 13-14.) In response, DWG's counsel stated he intended to permanently forego using the term "U.S. Prime," and made the following offer, "[I]f we can fashion some kind of stipulated judgment between the two parties, *we can call this a closed deal and waste no more resources*." (*Id.* at 14 (emphasis added). The district court then asked counsel, "What if I just say based on the stipulation of the parties, the injunction is permanent; each party to bear its own costs, would that achieve the offer you just made?" (*Id.*) Mr. Little responded with a request for two or three days to review the draft. In reply, the district court stated:

> [L]et me tell you exactly what it would be. It would be my order granting [the preliminary] injunction of September 28th . . . . It would have one paragraph that would say based on the stipulation and the discussion at this hearing, the following order becomes permanent. There would be a final paragraph that would say I find this is not an exceptional case justifying an award of attorney's fees, therefore, the case is dismissed. Each party to bear its own attorney's fees.

(*Id.* at 15.) DWG's counsel responded, "Your Honor, I have no problem with that at this point, *and that way I would not have to bring up more issues*, and I would be – *I am acceptable to that*." (*Id.*)

Thus, DWG's argument that its stipulation did not cover the issues of unclean hands and secondary meaning is unsupported in the record. Indeed, DWG's counsel twice indicated his wish to call this a closed case to avoid raising new issues and to avoid wasting resources. He settled without expressing any reservations, knowing the scope of the preliminary injunction—having appealed those issues already—and knowing that an identical permanent injunction order would conclude the entire case. DWG points to no case law requiring the district court to instruct counsel on the legal consequences of his actions when consenting to judgment. In addition, if DWG was dissatisfied with any part of the permanent injunction order, it should have raised these objections with the district court first, rather than immediately filing an appeal.

Because the entire scope of the preliminary injunction was included within the stipulation and no other exception to the rule prohibiting the appeal of consent

-10-

judgments is applicable, DWG has waived its right to appeal and affirmance is necessary. *See Mock*, 971 F.2d at 526 n.5 ("[T]he appropriate disposition, if the appeal represents no more than a retroactive attempt to undo consent properly given, is affirmance rather than dismissal.").[5]

## B. Sanctions

RUFI filed a motion for sanctions under FED. R. APP. P. 38 contending DWG's arguments on appeal fail to provide any legitimate basis for overturning a stipulated permanent injunction order. It also argues DWG's appeal is essentially a re-hashing of its previous appeal. Consequently, RUFI avers DWG has wasted judicial resources and caused RUFI to incur significant costs in defending itself. It requests an award of just damages, including attorney fees and double costs.[6] In opposition, DWG argues this appeal was not taken in bad faith nor is it frivolous; it contends it is based on a disagreement over the scope of the stipulation.[7] DWG has also filed a

---

[5]Given our disposition of the effect of the consent judgment, RUFI's conditional cross-appeal regarding the district court's denial of attorneys' fees is moot.

[6] RUFI has had two law firms representing it in this appeal. According to the affidavits attached to the motion for sanctions, as of September 30, 2004, the Winder & Haslam firm's attorneys' fees for this appeal total $19,414.25 and the Hardy, Carey, & Chautin firm's attorneys' fees for this appeal total $8,683.00. Attached to the affidavits are time records for each firm.

[7] DWG also argues sanctions are unwarranted because RUFI is guilty of the very action upon which it seeks sanctions against DWG, *i.e.*, RUFI has appealed the district court's denial of attorneys' fees after stipulating to the permanent injunction order. This argument is baseless as RUFI filed its appeal as a conditional appeal.

-11-

motion for sanctions against RUFI claiming RUFI's attorneys perpetuated a fraud on the district court and this Court.

Rule 38 of the Federal Rules of Appellate Procedure provides:

Frivolous Appeal—Damages and Costs

If a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee.

"An appeal is frivolous when the result is obvious, or the appellant's arguments of error are wholly without merit." *Braley v. Campbell*, 832 F.2d 1504, 1510 (10th Cir. 1987) (en banc) (quotations omitted). In *Braley*, we quoted with approval the following observation by then Chief Judge Markley of the Sixth Circuit, "[F]rivolity, like obscenity, is often difficult to define. With courts struggling to remain afloat in a constantly rising sea of litigation, a frivolous appeal can itself be a form of obscenity. Rule 38 should doubtless be more often enforced than ignored in the face of a frivolous appeal." *Id.* at 1511 (quoting *WSM, Inc. v. Tennessee Sales Co.*, 709 F.2d 1084, 1088 (6th Cir. 1983)).

In addition to parties, in an appropriate case, Rule 38 also permits sanctions against attorneys personally for taking a truly frivolous appeal on behalf of their clients. *Id.* The test is not whether the attorney acted with subjective bad faith but rather whether his/her conduct, when viewed objectively, "manifests either intentional or reckless disregard of the attorney's duties to the court." *Id.* at 1512.

When a court imposes sanctions under Rule 38, it must sufficiently express the basis for them. *Id.* at 1513. Due process requires that notice and an opportunity to be heard be given to the person against whom sanctions are requested. *Id.* at 1514. Such due process requirements are satisfied if the party seeking sanctions files a separate motion for sanctions and the party against whom sanctions are sought has the opportunity to file a brief or otherwise be heard.[8] *Id.* at 1515.

The district court did not impose sanctions against DWG but warned Little he was getting close. We defer to the district court's decision. However, on appeal, DWG and its counsel have crossed the line. Not only did DWG stipulate to the judgment it now challenges on appeal, it is also reurging precisely the same positions which we have previously resolved in its first appeal. DWG's characterization of the record is disingenuous, blaming the stipulation on the wording of the court's order cancelling all dates in the scheduling order and the pressure created by the court's legitimate warnings regarding counsel's conduct. As to the new evidence on which this appeal allegedly relies, DWG declined to present and argue this evidence to the district court after being expressly invited to do so. Instead, DWG stipulated to judgment and filed its notice of appeal eight days after judgment issued. The

---

[8] Indeed, the Advisory Committee Notes to the 1994 Amendments to Rule 38 state a party's request for sanctions must be presented in a separate motion; it is insufficient to make such a request in a party's brief as such requests have become too commonplace and can be easily overlooked by the other party.

excuses for this behavior are decidedly unsatisfactory. As a result, RUFI has incurred substantial time and expense in defending this appeal and we have wasted time and judicial resources resolving it.

As stated above, this Court has the power under Rule 38 to impose sanctions such as costs, attorneys' fees and double costs for the filing of frivolous appeals and "the inherent power to impose sanctions that are necessary to regulate the docket, promote judicial efficiency, and most importantly in this case, to deter frivolous filings." *Van Sickle v. Holloway,* 791 F.2d 1431, 1437 (10th Cir. 1986). Because RUFI filed a separate motion for sanctions (accompanied by documentation of fees) and DWG responded in opposition to RUFI's motion, due process considerations have been met. *See Braley*, 832 F.2d at 1515. Therefore, we grant RUFI's motion and order DWG to pay RUFI's attorneys' fees to the Winder & Haslam firm in the amount of $19,414.25 and to the Hardy, Carey, & Chautin firm in the amount of $8,683.00. We decline to impose double costs as RUFI requested.

As to DWG's motion for sanctions against RUFI claiming its attorneys had perpetrated a fraud on the district court and in the appellate briefs, we have carefully reviewed the record and find this claim to be without merit.

### III. Conclusion

For the reasons set forth above, DWG's Motion to Supplement the Record and Motion for Sanctions on Appeal are **DENIED**. We **AFFIRM** the stipulated order

-14-

entered by the district court granting a permanent injunction.  Pursuant to FED. R. APP. P. 38 and the inherent power of this Court, we award RUFI its attorneys' fees on appeal as noted above.

**Entered by the Court:**

**Terrence L. O'Brien**
United States Circuit Judge