

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-6-2004

# Kline v. Security Guards Inc

Precedential or Non-Precedential: Precedential

Docket No. 03-3404

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Kline v. Security Guards Inc" (2004). *2004 Decisions.* Paper 177.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/177

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

IN THE UNITED STATES COURT
OF APPEALS
FOR THE THIRD CIRCUIT

———————

NOS. 03-3404, 03-3610, 03-3620

———————

DAULPH KLINE; TERRY KLINE, individually, and On Behalf of All Others Similarly Situated; DAVID J. BIGG; JOSEPH T. COULSON; ROBERT L. LASH; JOHN M. SPEARS, JR., WILLIAM ALLEN; JAMES ALLEN; JOHN ALSVAN; EDWARD ANDERSON; KENNETH ARTERS, JR.; TONY AZZARELLO; TERRY BACHERT; GLENN BALTHASER; THOMAS BARTASHUS; FRANCIS BEIERSCHMITT; GERALD BENDER; JOE BICKELMAN; BRETT BILLINGS; JOSEPH BISCANTI; VERNON BLOOM, JR.; MICHAEL BODOLUS; CHRISTOPHER BORN; PATRICIA BORRELL; JEFFREY BOSTON; DAVID M. BRAMLEY; THOMAS BRENEMAN; WILLIAM BROWN; JOHN BUGERA; ANTHONY BUONO; ANTHONY CALCAGNO, JR.; JOSEPH CARDELL; RICHARD CARL; WILLIAM CARPENTER; ALAN CLOUSER; FRANK CRAMMER, JR.; ALFRED CRAMMER, JR.; TERRY CROSSELY; ROBERT CRUPI; ANDREW CUCCARO, JR.; LEE DALTON; MINH DAO; ROBERT DAVIDSON; BRENT DAVIS; TIMOTHY DEBECK; MARGARET DECKER; MARK DETTERLINE; KENNETH DEWALD; THOMAS DIETRICH; JOHN DILALLO; BRIAN DOERRMAN; KENNETH ECKERT; BERNARD EHRETS; ANTONIO ESPINOSA; JOSEPH ESSICK; GARY ETTEL; BART FAUST; STEPHEN FAUST; EDWARD FELEGI; BRUCE FISHBURN; WILLIAM FISHER; GERALD FOGARTY; RAYMOND FOLK, JR.; MICHAEL FREY; RICHARD FRITZ, JR., DERK FRONHEISER; CASEY GANSTER; JOHN GASPERETTI; JAMES GASPERETTI; SANDRA GAWNE; DENNIS GAY; DONALD GEDDIO; GEORGE GEIGER; RONALD GOREY; CARL GRAEFF; RITCHIE GRETH; PERRY GRIESEMER; GILL GROVE; JOE GUIDO; JEFFREY HANNAHOE; DOUGLAS HARRIS; RICHARD HARRIS; JAY HARTMAN; JOHN HEFT; RODERICK HELLER; GLENN HELMAN; RICH HERB; JAMES HESS; ROSE MARIE HESSLER; PATRICK HOLLYWOOD; THOMAS HOLT; JOHN HORNBERGER; MICHAEL HUBIAK; KEVIN IMPINK; GARY JAMES; CHRIS JONES; EDWIN JONES; MARVIN KACHEL; JOHN KAHN, JR.; WALTER KATCHUR; HARRY KAUFFMAN; ALLAN KEHL; MARK KERBER; LARRY KLINE; WILLIAM KOCUR; MARK KRAMMES; ALBERT KUKLIS; GARY LECHNER; TERRY LEESE; BYRON LEIBY; GRANT LEONTI; TODD LESHER; JOHN LISA; ROBERT LONG; WALTER LOOSE; EDWARD LUBAS; DAVID LUCARELLI; RAYMOND LUTZ, III; GARY MADARA; JAMES MARKUS; KARL MATTERN; JEFFREY MAULICK; JESSE MAY; EUGENE MCCLURE; RICHARD MERSINGER; LAWRENCE MICCICKE, JR.; WALTER MILLER;

RICHARD MILLER; THOMAS MOYER; RICHARD MULHOLLAND; MICHAEL MULLIGAN; THOMAS MULUTZIE; R. MUNDELL; JOHN MURRAY; CHRISTOPHER NEITHAMER; RAYMOND NEUHEIMER; DAWN NIEDZIELSKI; VITO NINFO; RAY OVERTON, JR.; GEORGE PALM, JR.; HOWARD PALMER; DONALD PAPP; CRAIG PAWLING; DAVID PHILLIPS; WILLIAM PIANO; TIM PONATOSKI; RONALD PORRINO; RORY QUINTER; TERRY RAEZER; DANIEL REEVES; KEITH REICHART; SHIRLEY REICHART; JEFFREY REIFSNYDER; DENNIS REMP; LOUIS REYES; FLOYD RHODES, IV; LOUIS RODINO; JEFFREY ROTHERMEL; GEORGE SALTZMAN, 3RD; RANDY SANDERS; SAMUEL SCHAEFER; MICHAEL SCHAEFFER; TERRY SCHAEFFER, SR.; JOHN SCHAICH; RANDY SCHIES; LINDA SCHLEGEL; DARRELL SCHLEGEL, SR.; DALLAS SCHLIECHER; THOMAS SCHWARTZ; ANTHONY SEDOTI; EUGENE SEDOTI; JAMES SELTZER; TIMOTHY SHERMAN; GENE SHIMP; GEORGE SHIREY, JR.; CHRISTOPHER SHOEMAKER; GEORGE SHUPP; PAUL SILK; JOSEPH SPICA; RICHARD STICHTER; CURTIS STIELY; DOUGLAS STROHL; THEODORE SULLIVAN; NORMAN SUNDAY; JOSEPH TOKONITZ; FREDERICK TRATE, JR.; WALTERS VACULA; RICHARD VALENTINE; BARRY WALTERS; DAVID WALTERS; BRIAN WALTERS; RICHARD WAWRZYNIAK, JR.; LARRY WEBBER; KENNETH WEIDENHEIMER; KENNETH WEIKEL; VICTOR WELLER, JR.; CALVIN WILLIAMS; LAWRENCE WILLIAMS, JR.; ROBERT WILLIAMSON; RICHARD WOLF; MARC WOLFE; MIKE XAVIOS; TERRY ZERBE; JOHN ZIATS; STEVE ARTHUR; WILLLIAM BANGS; WILLIAM BARNHART; THOMAS BARRETT; RAYMOND BARTON; MARLIN BASHORE; BRIAN BATES; PETER BECKER; RON BESSIL, JR.; HELEN BILLMAN; JAY BLANKENBILLER; BRADFORD BOLL; ROBERT BORD; PAUL BOYER; GREGORY BOYER; SAM BROBST; ROBERT CHILA, SR.; LEWIS COLLINS; BRIAN CONRAD; FERRELL COOPER; GARY COOPER; ROBERT COULTER; MICHAEL DAVIDSON; DAVID DEANGELO; PAUL DELBO, SR.; RICHARD DIEHL; LARRY DURHAM; GLENN FISHER; EVAN FOURNRIS; ANTHONY GATTO, JR.; STEPHEN GERAS; ALFRED GIACOMINI; GEORGE GRENUS; LAFAYETTE HAYES; JOHN HECKMAN, SR.; RANDY HERTZOG; DENNIS HILL; JOHN HORNING; SHAWN INGRAM; STANLEY JOHNSON; RUSSELL KLINE; LESTER KLOCK; RICHARD KOHARCHECK; KEITH KRAMMES; ROBIN KRICK; STEVEN KRUSZEWSKI; RAYMOND KUBACKI, JR.; S. KEITH KULP; PATRICIA LAYTON; THOMAS LECHNER; THEODORE LEWIS; JOSEPH LISA; ROSALIE LONG;

JOSEPH MARONE; GEORGE MATALAVAGE; JAMES MAY; JACK MCNERNY, JR.; WILLIAM MERRIWEATHER; H. DAVID MILLER; JANE MILLER; WILLIAM MOLINA; ANDREW MOORE; GARY MOYER; SCOTT NEITHAMER; GLENN NEWCOMB; MAURIO PETA; GERARD PETERKA; RANDALL PHILLIPS; RICHARD PHILLIPS; WILLIAM PICKUP, JR.; MIKE PINKASAVAGE; RONALD PRESSLEY; JEFFREY PRINCE; DON QUIRE; STEVEN REICHART; WINFRED ROMAN; KEVIN RORKE; BARRY SCHAEFFER; DONALD SCHIEN; TODD SWARTZ; GENE SEDOTI; WILLIAM SHUPP, III; ANNETTE SICENAVAGE; JAMES SIMMONS; BARRY SNYDER; ROBERT SNYDER, JR., D. STUBBLEBINE; ANGELO TADDEO; STEPHEN THOMPSON; TERRY TRAYER; JOHN WALCHAK, JR.; ROBERT WALLACE; ARLAN WEAVER; TERRY WENZ; RON WESSNER; WADE WESSNER; RICHARD WOLF; ROBERT YENSER; CHARLES ZAMBIASI; GREGORY D. ARTERS; AARON C. AUGHTRY; KENNETH BAIR; GLENN D. BEARSTIER; DALE A. BENDER; MARIO BISBANO; HARRY E. BOWERS, JR.; JIMMIE CALDWELL; JOSEPH T. COULSTON, JR.; HOWARD C. CRAWFORD, JR.; KURT D. DAHMS; GREGORY L. DUFFIN; PATRICK J. DUGGAN; ROY M. FLOWERS; LEROY G. FREY; MICHAEL J. GALAVAGE; NATHAN A. GARBER; DERRICK L. GRAVES; ARNEL C. GRETH; MICHAEL R. HANSFORD; STEVEN J. HAUGER; DENIS J. HEYDT; JOHN J. HOMKA, JR.; MARC HUNTZINGER; THOMAS C. ISETT; CHRISTOPHER W. JONES; ROBERT C. JONES; Individually and in his capacity as Pottstown Borough Manager; TIMOTHY O. KAHL; DIANE LEFFLER; GERALD E. LUTZ; WILLIAM M. MCANDREW; SCOTT R. MELL; JEFFREY S. NOLL; GEORGE R. O'NEILL; RICKY C. OSWALD; KENNETH A. PLANER; WILLIAM H. RAVERT; SALVATORE L. RIZZO; GREGORY C. SANCINELLA; RICHARD D. TOLLAND; KENNETH WARFIELD; GARY L. WEISS; LARRY L. WOLFE; JOSEPH E. YAKAITIS; FRANCIS M. ZELLER; JOHN CONTSICOS; HAROLD J. FASIG; CHARLES E. FELTY, JR.; DALE FOX; CARL FURILLO; MICHAEL GROSS; TOM HOLLAND; MARK K. OUDINOT; JEFFREY G. RACZKA, SR.; GERALD B. RHOADS; ANTHONY W. ROTKISKE, JR.; RICHARD J. SEISLER, II; JOSEPH F. SHOUMLISKY,

Appellants in No. 03-3404
Cross Appellees in Nos. 03-3610
and 03-3620

v.

SECURITY GUARDS, INC.
Appellant in No. 03-3610
Cross Appellee in No. 03-3404;

DANA CORPORATION
Appellant in No. 03-3620
Cross Appellee in No. 03-3404

3

On Appeal From the United States
District Court
For the Eastern District of Pennsylvania
(D.C. Civil Action No. 00-cv-00566)
District Judge: Hon. Franklin S.
VanAntwerpen
Magistrate Judge: Hon. Linda K.
Caracappa

Argued June 29, 2004

BEFORE: AMBRO, ALDISERT and
STAPLETON, <u>Circuit Judges</u>

(Opinion Filed: October 6, 2004)

Joseph F. Roda (Argued)
Roda & Nast
801 Estelle Drive
Lancaster, PA 17601
  Attorney for Daulph Kline, et al.
  Appellants in No. 03-3404
  Cross Appellees in Nos. 03-3610
  and 03-3620

Scott L. Vernick
Joshua Horn (Argued)
Emil J. Kiehne
Fox Rothschild
2000 Market Street
10th Floor
Philadelphia, PA 19103
  Attorneys for Security Guards, Inc.
  Appellant in No. 03-3610
  Cross Appellee in No. 03-3404

Scott F. Cooper (Argued)
Scott A. Mayer
Blank Rome
One Logan Square
Philadelphia, PA 19103
  Attorneys for Dana Corporation
  Appellant in No. 03-3620
  Cross Appellee in No. 03-3404

## OPINION OF THE COURT

STAPLETON, <u>Circuit Judge</u>:

Daulph Kline and Terry Kline brought suit in the Court of Common Pleas of Berks County, in the Commonwealth of Pennsylvania, against Dana Corporation ("Dana"), Security Guards, Inc. ("SGI"), and Radio Maintenance, Inc. ("RMI"; collectively, the "Defendants") asserting numerous claims arising under Pennsylvania law. Defendants thereafter removed the case to the United States District Court for the Eastern District of Pennsylvania, contending that Appellants' claims were completely preempted by § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. RMI was ultimately dismissed as a party and judgment was entered in favor of Dana and SGI. This appeal followed. Because we conclude that the District Court did not have subject matter jurisdiction over any of the state law claims asserted in the complaint, we will vacate the judgment and remand to the District Court with instructions to return this case to the

4

Pennsylvania Court of Common Pleas.

## I.

This case arises out of Dana's alleged surveillance of its hourly employees at one of its facilities in Reading, Pennsylvania. Dana, a Virginia corporation, is a manufacturer of automobile and truck assembly components. During the relevant period, its hourly employees working at the facility were represented by the United Steel Workers of America, Local 3733 (the "Union") and were subject to a Collective Bargaining Agreement ("CBA") between Dana and the Union.

On September 28, 1998, Dana installed an audio and video surveillance system in an entryway at its Reading facility. The system was allegedly purchased from, and installed by, RMI. It consisted of two cameras with built-in microphones, a monitor with a built-in speaker, and a twenty-four hour video cassette recorder. The system enabled Dana to monitor the entryway, which was the location at which its hourly employees were required to "punch-in." The cameras automatically sent video and audio signals to the monitor, which was located in a guard booth adjacent to the entryway. The guard booth was operated by employees of SGI, a Pennsylvania corporation, which had contracted with Dana since 1989 to provide it with security services. The SGI guards operating the booth reported to, and were supervised by, Dana managers.

Approximately one week after installation of the system, two hourly employees at the Reading facility, Terry and Daulph Kline, learned from certain SGI guards operating the guard booth that the surveillance system had the capacity to transmit to the monitor oral communications taking place in the entryway. The Klines then reported this fact to their Union representatives. Over the course of the following weeks, the Union made inquiries of Dana's management concerning its use of the surveillance system. These inquiries resulted in the removal of the system on October 29, 1998.

Terry and Daulph Kline filed a complaint against Defendants in the Court of Common Pleas of Berks County, in the Commonwealth of Pennsylvania, asserting, in sixty-nine counts, (1) claims under the Pennsylvania Wire Tapping and Electronic Surveillance Control Act (the "Wiretap Act"), 18 Pa. Cons. Stat. § 5725; (2) claims under the Pennsylvania Private Detective Act of 1953 (the "Detective Act"), Pa. Stat. Ann. tit. 22, § 26; and (3) various Pennsylvania common law tort causes of action, including invasion of privacy.[1] Shortly thereafter, Defendants

---

[1] Thirty of those counts were asserted against Defendants under § 5725 of the Wiretap Act, which provides a civil cause of action for any person whose oral communications are intercepted, disclosed, or used, to recover against any person who intercepts, discloses, or uses such oral communications in violation of the Wiretap Act. Four of the counts asserted civil conspiracy claims under § 16 of the

removed the case to the District Court for the Eastern District of Pennsylvania and filed motions to dismiss. The Klines filed a motion to remand. The District Court, without opinion, denied both the Defendants' motions to dismiss and the Klines' motion to remand. Accordingly, the District Court retained jurisdiction and allowed the matter to proceed.[2] This

Detective Act, alleging that Dana, SGI, and RMI violated, and conspired to violate, this statute by forming a scheme to intercept and disclose Plaintiffs' oral communications to the detriment of their rights to form, join, or assist a labor union, and their constitutional rights to association, collective bargaining, and assembly. Six counts asserted tort claims against Defendants for invasion of privacy. Twelve counts asserted that Defendants had negligently or recklessly supervised their duly authorized officers, agents, servants, or employees, thereby causing harm to Plaintiffs. Eight counts asserted that Defendants had negligently or recklessly supervised the premises or instrumentalities under their control. Six counts asserted a respondeat superior theory against Defendants for the actions of their employees. Two counts asserted that Dana had failed to exercise reasonable care to protect Appellants as business invitees. The final count asserted class action allegations.

[2]The District Court denied the Klines' motion for class certification, and they were subsequently joined by approximately 370 additional plaintiffs

appeal was filed following the entry of final judgment

## II.

We are presented with a final order of a District Court to review. Accordingly, we have appellate jurisdiction. 28 U.S.C. § 1291. It is not clear, however, that the District Court had subject matter jurisdiction to enter that judgment, and we are obliged to raise and resolve that jurisdictional issue before addressing the merits of this appeal. *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 364 F.3d 102, 104 (3d Cir. 2004).

According to Dana and SGI, the District Court possessed subject matter jurisdiction because at least three categories of Appellants' claims were completely preempted by § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185: (1) the Wiretap Act claims; (2) the tort law invasion of privacy claims; and (3) the tort law negligent or reckless supervision claims. Appellants insist, however, that the LMRA was not implicated in any of their claims. We agree with Appellants that subject matter jurisdiction was lacking.[3]

who were hourly employees at Dana's Reading facility.

[3]"We exercise plenary review in determining whether the District Court had subject matter jurisdiction." *Bracken v. Matgouranis*, 296 F.3d 160, 162 (3d Cir. 2002) (citing *Wujick v. Dale & Dale, Inc.*,

### A.

"Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). If Appellants' case could not have been filed originally in federal court, then removal under 28 U.S.C. § 1441 was improper and Appellants would be entitled to the remand they initially requested. *See Roxbury Condo. Assoc., Inc. v. Anthony S. Cupo Agency*, 316 F.3d 224, 227 (3d Cir. 2003) ("Removal jurisdiction under section 1441 is . . . wholly derived from original federal jurisdiction."); *see also* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."). Here, diversity jurisdiction under 28 U.S.C. § 1332 was unavailable because SGI is a Pennsylvania corporation and the Klines were both Pennsylvania citizens. Accordingly, we must determine whether federal question jurisdiction existed under 28 U.S.C. § 1331. *See Caterpillar*, 482 U.S. at 392 ("Absent diversity of citizenship, federal-question jurisdiction is required [for removal].").

As the Supreme Court explained in *Caterpillar*:

> The presence or absence of federal-question jurisdiction is governed by the "well-pleaded complaint rule,"

43 F.3d 790, 792 (3d Cir.1994)).

which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. *See Gully v. First National Bank*, 299 U.S. 109, 112-113, 57 S. Ct. 96, 97-98, 81 L. Ed. 70 (1936). The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law.

*Id.* As we have indicated, Appellants' complaint in this case indeed sounded entirely in state law. That does not, however, end our analysis.

There is an exception to the well-pleaded complaint rule that precludes a plaintiff from "avoid[ing] a federal forum by 'artfully pleading' what is, in essence, a federal claim solely in terms of state law." *Tifft v. Commonwealth Edison Co.*, 366 F.3d 513 (7th Cir. 2004) (citing *Franchise Tax Bd. of State of Cal. v. Construction Laborers Vacation Trust for Southern California*, 463 U.S. 1, 22 (1983)). This exception, described as an "independent corollary" to the well-pleaded complaint rule is the so-called "complete preemption" doctrine. *Caterpillar*, 482 U.S. at 393. In *Caterpillar*, the Supreme Court articulated this doctrine as follows:

> On occasion, the Court has concluded that the pre-

7

emptive force of a statute is so "extraordinary" that it "converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Metropolitan Life Ins. Co.* [v. Taylor, 481 U.S. 58, 65 (1987)]. Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law. *See Franchise Tax Board*, *supra*, 463 U.S., at 24, 103 S. Ct., at 2854 ("[I]f a federal cause of action completely pre-empts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law").

*Id.*

Section 301 of the LMRA has been held to possess this preemptive force. *See Franchise Tax Bd.*, 463 U.S. at 23. It provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C.§ 185(a). We have previously had occasion to review extensively the Supreme Court's jurisprudence regarding the complete preemption of state law claims under § 301 of the LMRA. *See, e.g.*, *Voilas v. General Motors Corp.*, 170 F.3d 367, 373-76 (3d Cir. 1999); *Trans Penn Wax Corp. v. McCandless*, 50 F.3d 217, 228-30 (3d Cir. 1995); *Berda v. CBS, Inc.*, 881 F.2d 20, 22-25 (3d Cir. 1989). Accordingly, we will review the relevant principles only briefly.

In *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202 (1985), the Supreme Court set forth the standard for determining when a state law claim is completely preempted by § 301: "[W]hen resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim or dismissed as pre-empted by federal labor-contract law." *Id.* at 220 (citation omitted). In that case, the plaintiff brought a state tort claim against his employer for the bad-faith processing of an insurance claim. The Court concluded that this cause of action was completely preempted by § 301

because "[t]he duties imposed and rights established through the state tort . . . derive from the rights and obligations established by the [collective-bargaining] contract," and resolution of the dispute would therefore "inevitably . . . involve contract interpretation." *Id.* at 217-18. The Supreme Court noted, however, that "it would be inconsistent with congressional intent under [§ 301] to pre-empt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract." *Id.* at 212.

Subsequently, in *Caterpillar*, 482 U.S. 386, the Court considered whether § 301 permitted employees, who were covered by a collective bargaining agreement, to bring state law contract claims for breach of individual contracts between each employee and their employer. After reiterating that § 301 "governs claims founded directly on rights created by collective-bargaining agreements, and also claims substantially dependent on analysis of a collective bargaining agreement," the Court concluded that the employees' state claims for breach of their individual employment contracts were not preempted. *Id.* at 394 (internal quotation omitted). The Court reasoned:

> Section 301 says nothing about the content or validity of individual employment contracts. It is true that respondents, bargaining unit members at the time of the plant closing, possessed substantial rights under the collective agreement, and could have brought suit under § 301. As masters of the complaint, however, they chose not to do so.
>
> Moreover, . . . respondents' complaint is not substantially dependent upon interpretation of the collective-bargaining agreement. It does not rely upon the collective agreement indirectly, nor does it address the relationship between the individual contracts and the collective agreement.

*Id.* at 394-95. We have described *Caterpillar* as standing for the proposition that "employees have the option of vindicating their interests by means of either a section 301 action or an action brought under state law, as long as the state-law action as pleaded does not require interpretation of the collective bargaining agreement." *Voilas*, 170 F.3d at 373-74 (citing *Caterpillar*, 482 U.S. at 394-95).

The Supreme Court next addressed § 301 in *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399 (1988), where it considered whether that provision completely preempted an employee's state law retaliatory discharge claim against her employer. The Court's analysis focused first upon the elements necessary to make a prima facie retaliatory discharge claim under the relevant state law: (1) discharge

or a threat of discharge, and (2) a motive to deter the employee from exercising her rights. These elements, the court noted, constituted "purely factual questions pertain[ing] to the conduct of the employee and the conduct and motivation of the employer," neither of which "require[d] a court to interpret any term of a collective-bargaining agreement." *Id.* at 407. Accordingly, the Court concluded that the employee's state claim was "independent" of the relevant collective-bargaining agreement for purposes of § 301 because "resolution of the state-law claim d[id] not require construing the collective bargaining agreement." *Id.* Morever, the Court found it irrelevant that "the state-law analysis might well involve attention to the same factual considerations as the contractual determination of whether [the employee] was fired for just cause [under her collective-bargaining agreement]." *Id.* at 408. "[S]uch parallelism," according to the Court, would not "render[] the state-law analysis dependent upon the contractual analysis." The Court opined that the reason for this was that

> § 301 pre-emption merely ensures that federal law will be the basis for interpreting collective-bargaining agreements, and says nothing about the substantive rights a State may provide to workers when adjudication of those rights does not depend upon the interpretation of [collective-bargaining]

agreements. In other words, even if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is "independent" of the agreement for § 301 pre-emption purposes.

*Id.* at 409-410.

The Supreme Court addressed § 301 preemption most recently in *Livadas v. Bradshaw*, 512 U.S. 107 (1994). There, the Court was required to consider whether § 301 preempted a plaintiff's state law claim to recover a statutory penalty arising from her former employer's payment of late wages. The Court began its analysis by summarizing the relevant controlling principles:

> [T]he pre-emption rule has been applied only to assure that the purposes animating § 301 will be frustrated neither by state laws purporting to determine "questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement,"

10

nor by parties' efforts to renege on their arbitration promises by "relabeling" as tort suits actions simply alleging breaches of duties assumed in collective-bargaining agreements . . . .

In [*Allis-Chalmers*] and in *Lingle* . . . , we underscored the point that § 301 cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law, and we stressed that it is the legal character of a claim, as "independent" of rights under the collective-bargaining agreement (and not whether a grievance arising from "precisely the same set of facts" could be pursued) that decides whether a state cause of action may go forward. Finally, we were clear that when the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished.

*Id.* at 122-24 (internal citations and footnotes omitted). Applying these principles, the Court reasoned that

[t]he only issue raised by [the plaintiff's] claim, whether [her employer] "willfully fail[ed] to pay" her wages promptly upon severance, was a question of state law, entirely independent of any understanding embodied in the collective-bargaining agreement between the union and the employer. There is no indication that there was a "dispute" in this case over the amount of the penalty to which [the plaintiff] would be entitled, and *Lingle* makes plain in so many words that when liability is governed by independent state law, the mere need to "look to" the collective-bargaining agreement for damages computation is no reason to hold the state-law claim defeated by § 301.

*Id.* at 124-25. Accordingly, the Court concluded that the plaintiff's state law claim was not completely preempted by § 301 of the LMRA.

## B.

At the outset, we address Dana's and SGI's general contentions with respect to Appellants' state law claims. According to Dana and SGI, the state claims go to the "core" of Dana's management rights, a subject of collective bargaining. They also

11

argue that Appellants' state claims "necessarily implicate" the "Management's Rights" and "Shop Rules" clauses of the CBA between Dana and the Union.[4] Dana and

condition suspend work.

Section 2. Promotions – Discipline – Discharge

The right to promote, and the right to discipline and discharge for proper cause are likewise the sole responsibility of the Management. Provided, the claims of discriminatory promotions and of wrongful or unjust discipline or discharges shall be subject to the Grievance Procedure herein provided.

Proper cause for discipline and discharge shall be determined in accordance with the rules and procedures outlined in Exhibit B, Shop Rules and violations of Shop Rules. If no rule exists under the Shop Rules then management's rights would apply.

Section 3. Order and Efficiency

(a) The right to hire and to maintain order and efficiency is the sole responsibility of the Management.

(b) There will be no hiring of part-time or

[4]The relevant portion of the CBA provides:

ARTICLE 11. MANAGEMENT'S RIGHTS

Section 1. General

The Union recognizes the rights and responsibilities belonging solely to the Company, such as the rights to decide the number and location of plants, the machine and tool equipment, the products to be manufactured, the method of manufacture, the schedules of production, the processes of manufacturing or assembling, together with all designing engineering and the control of raw materials, semi-manufactured, and finished parts which may be incorporated into the products manufactured.

When required by Management, employees necessary to maintain protection of the Company's property shall under no

SGI therefore contend that the claims cannot be analyzed without reference to the CBA. While it is true that the CBA may be consulted in the course of litigating Appellants' claims, it does not follow that their claims are completely preempted.

In *Trans Penn Wax Corp. v. McCandless*, 50 F.3d at 230-31, we addressed, and rejected, a similar argument in support of finding complete preemption under § 301. In that case, the plaintiff employees were subject to a collective-bargaining agreement between their employer and their union, but had also entered into individual employment contracts in which the employer guaranteed their job security. Several of the employees were later terminated and thereafter brought state law claims against their employer for breach of contract, fraud, and intentional infliction of emotional distress, relating to the representations made by the employer in their individual employment contracts. One of the arguments advanced by the employer in favor of finding preemption

temporary employees to do any work that is performed by bargaining unit employees.

App. at 605. The "Shop Rules" exhibit to the CBA prescribes conduct that covered employees are prohibited from engaging in, as well as procedures for dealing with the prescribed infractions.

was that the "foundation" of the state law tort and contract claims was "job security in the face of layoffs or discharge," a mandatory subject of collective bargaining and a subject covered in the collective bargaining agreement. *Id.* at 230. Consequently, the employer argued, the claims were dependent upon the applicable collective-bargaining agreement and should be preempted by § 301. We rejected this argument, reasoning that

> [t]he employees have not alleged [that the employer] violated the terms and conditions of the collective bargaining agreement. While the state law claims here relate to job security, they are grounded in the guarantee given the employees by [the employer]. The collective bargaining agreement does not mention the individual employment contracts, nor does [the employer] explain how the claims are substantially dependent on analysis of the collective bargaining agreement. The fact that job security is addressed in the collective bargaining agreement is "of no consequence, because [the employees] need not refer to ... the collective bargaining agreement in order to make out [their] claim." *Berda*, 881 F.2d at

13

*Id.* at 230-31 (footnote omitted). In rejecting the employer's argument, we also noted that "'there is nothing novel about recognizing that substantive rights in the labor relations context can exist without interpreting collective-bargaining agreements." *Id.* at 231 (quoting *Lingle*, 486 U.S. at 411).

Similarly here, Appellants have not alleged a violation of any term or condition of the CBA. Nor does it appear from the face of their complaint that any of their state claims are founded upon rights created by the CBA. Although their state claims relate to conduct that Defendants engaged in at Appellants' workplace, those claims, as in *Trans Penn Wax*, are nonetheless grounded in substantive rights granted under state law. Moreover, the CBA itself makes no mention of the use of video cameras, microphones, or other surveillance of any kind. Like *Trans Penn Wax*, the essential question is not whether Appellants' claims relate to a subject – management's rights – contemplated by the CBA. In fact, *Caterpillar* and *Lingle* both recognize that a finding of preemption under § 301 is not required even if the same set of facts may give rise to a state law claim as well as an action for violation of the CBA. Rather, the dispositive question here is whether Appellants' state claims require any *interpretation* of a provision of the CBA. *Id.* at 229 ("[A] plaintiff may bring a state law tort action against an employer, even where he could have brought a similar claim based on a provision in his collective bargaining agreement, so long as the state claim does not require interpretation of the collective bargaining agreement.").

Although Dana and SGI rely upon the "Management's Rights" and "Shop Rules" clauses of the CBA, they do not point to any specific provision of these clauses that must be interpreted in order to resolve Appellants' claims. Nor can we identify any provision that would require interpretation. A finding of § 301 preemption is not mandated simply by the contention that Appellants' state law claims "necessarily implicate" the CBA. That is, the mere fact that we must look at the CBA in order to determine that it is silent on any issue relevant to Appellants' state claims does not mean that we have "interpreted" the CBA. As the Ninth Circuit Court of Appeals has recently stated in applying *Livadas*:

> [A]lleging a hypothetical connection between the [state law] claim and the terms of the CBA is not enough to preempt the claim: adjudication of the claim must require interpretation of a provision of the CBA. A creative linkage between the subject matter of the claim and the wording of a CBA provision is insufficient; rather, the proffered interpretation argument must reach a reasonable level of credibility. *Cf. Livadas*, 512 U.S. at 124-25, 114 S. Ct.

14

2068. The argument does not become credible simply because the court may have to consult the CBA to evaluate it; "look[ing] to" the CBA merely to discern that none of its terms is reasonably in dispute does not require preemption. *Id.* at 125, 114 S. Ct. 2068.

*Cramer v. Consolidated Freightways Inc.*, 255 F.3d 683, 691 (9th Cir. 2001) (en banc).

With this background, we turn to each of the Appellants' state law claims to determine whether they require interpretation of the CBA.

1.

Appellants claim that Defendants violated § 5725 of the Wiretap Act. Such a claim requires a plaintiff to demonstrate: "(1) that he engaged in [an oral] communication; (2) that he possessed an expectation that the communication would not be intercepted; (3) that his expectation was justifiable under the circumstances; and (4) that the defendant attempted to, or successfully intercepted the communication, or encouraged another to do so." *Agnew v. Dupler*, 717 A.2d 519, 522 (Pa. 1998). In *Agnew*, the Supreme Court of Pennsylvania held that "a conversation amounts to a protected 'oral communication' under the Wiretap Act only where the speaker possessed a reasonable expectation of privacy in the conversation." *Id.* at 523. Moreover, the Court decided that "the standard for such

expectation of privacy is one that society is prepared to recognize as reasonable," which "is necessarily an objective standard." *Id.*

Dana and SGI insist that this claim is completely preempted by § 301 of the LMRA because the justifiable expectation of Appellants cannot be determined without reference to Dana's bargained-for management rights to direct the supervision of employees. We regard this argument as foreclosed by our decision in *Trans Penn Wax*. As we have noted, the employees in that case alleged that the employer's breach of its guarantees of job security, granted in individual contracts with the employees, constituted fraud and the intentional infliction of emotional distress. Under Pennsylvania law, one of the elements required for a fraud claim was that the plaintiff justifiably relied on the defendant's misrepresentations. One of the essential elements of a cause of action for intentional infliction of emotional distress was a showing that the defendant's conduct was "extreme and outrageous." Much like Dana and SGI, the employer in that case argued that the only way to determine whether the employees were justified in relying upon its representations guaranteeing job security or whether its conduct had been "extreme and outrageous" was to interpret the applicable collective bargaining agreement. In both instances, the employer suggested, the collective bargaining agreement was part of the context in which the issue had to be addressed. Arguably, for example, the

collective-bargaining agreement could have contained provisions that undermined the employees' allegation that their reliance upon the separate guarantees was justified. Nonetheless, we rejected the employer's argument, holding that neither of these two tort claims was completely preempted by § 301. We pointed out that the "justifiable reliance" and "extreme and outrageous conduct" were "purely factual questions," the resolution of which did not "require[] interpretation of the collective bargaining agreement [or] substantially depend[] on its construction." *Trans Penn Wax*, 50 F.3d at 232. The fact that a collective bargaining agreement was part of the context in which an employee's claim must be addressed thus did not trigger complete preemption in the absence of some substantial dispute over the meaning of the collective bargaining agreement.

Based on *Trans Penn Wax*, we must reject Dana and SGI's contention that the only way to determine whether Appellants had a justifiable expectation of privacy is by interpreting the CBA. Appellants' justifiable expectations can be determined by a state court simply by considering the conduct of Dana and the facts and circumstances of Appellants' workplace. Dana has provided no reason to believe that such a determination will require the resolution of any dispute concerning rights or obligations contained in the CBA, and we are unable to perceive one. "[W]hen the meaning of contract terms is not the subject of dispute, the bare fact that a collective bargaining agreement will be

consulted in the course of state law litigation plainly does not require the claims to be extinguished." *Livadas*, 512 U.S. at 124.

Dana and SGI insist that their argument is supported by numerous cases that have found state law invasion of privacy claims completely preempted by § 301. *See, e.g.*, *In re General Motors Corp.*, 3 F.3d 980, 982 (6th Cir. 1993); *Mock v. T.G. & Y. Stores Co.*, 971 F.2d 522 (10th Cir. 1992); *In re Amoco Petroleum Additives Co.*, 964 F.2d 706 (7th Cir. 1992); and *Kirby v. Allegheny Beverage Corp.*, 811 F.2d 253 (4th Cir. 1987). We find these cases either inapposite or lacking in continued vitality following the Supreme Court case law we have earlier discussed. Moreover, to the extent any of them is in tension with *Trans Penn Wax*, we must, of course, remain faithful to that decision.

In *Kirby v. Allegheny Beverage Corp.*, a plaintiff brought a state law invasion of privacy claim against his employer after he was forced to submit to a search of his person and then forced to resign after refusing to submit to a search of his automobile. The employer removed the case to federal court and sought dismissal on grounds of complete preemption by § 301 of the LMRA; the Court of Appeals for the Fourth Circuit agreed. It reasoned that "the issues presented by the search in this case are 'grist for the mill of grievance procedures and arbitration.'" *Id.* at 256 (quoting *Strachan v. Union Oil Co.*, 768 F.2d 703, 705 (5th Cir. 1985)). According to the

16

Court, it was clear that the plaintiff could refuse to submit to the search, and if dismissed, could have challenged the termination under the grievance procedures provided for in his CBA. Furthermore, the Court noted, if his union had refused to submit a grievance, the plaintiff could have then sued his union for breach of the duty of fair representation, under the Supreme Court's decision in *Vaca v. Sipes*, 386 U.S. 171 (1967). According to the Court, "the availability of remedies under the labor contract precludes appellant's pursuit of those remedies in a state law tort action." *Kirby*, 811 F.2d at 256.

We are unable to reconcile this conclusion with the Supreme Court's decision in *Caterpillar*, which was decided four months after *Kirby*. As we noted above, *Caterpillar* holds that an employee has the option of vindicating his interests by seeking a remedy available under a collective-bargaining agreement or by bringing a state court action, as long as the state law action does not require interpretation of the collective-bargaining agreement. 482 U.S. at 394-95. Thus, *Kirby*'s holding – that the availability of a labor contract remedy precluded a state tort action brought to vindicate the same interests – did not survive *Caterpillar*.

In *In re Amoco Petroleum Additives Co.*, an employee sued for invasion of privacy and intentional infliction of emotional distress after Amoco installed a camera outside of the women's locker room. With respect to complete preemption, the employee argued that his state law claims did not depend on the meaning of the applicable collective-bargaining agreement. Although the employee conceded that the collective-bargaining agreement could have authorized the surveillance, he noted that nothing in the agreement actually mentioned cameras, locker rooms, or surveillance in general. The Court agreed with Amoco, however, that the management-rights provision of the parties' collective bargaining agreement could fairly be read as a "residual clause" commuting "everything that [was] neither regulated nor forbidden by the . . . agreement . . . to [the] discretion" of the employer. Since this arguable reading would authorize the challenged surveillance, the Court concluded that a "state court could not award damages without first construing the collective bargaining agreement and rejecting Amoco's interpretation of the management-rights clause." *Id.* at 709.

The *Amoco* Court relied primarily on *Kirby* and *Stikes v. Chevron USA, Inc.*, 914 F.2d 1265 (9th Cir. 1990). Just as we have concluded that *Kirby* did not survive *Caterpillar*, an *en banc* Ninth Circuit Court of Appeals has concluded that *Stikes* did not survive the ensuing Supreme Court jurisprudence. *See Cramer v. Consolidated Freightways, Inc.*, 255 F.3d 683, 692 (9th Cir. 2001) (en banc). Given that jurisprudence, it is not clear to us that we would have reached the same result reached by the *Amoco* Court. In any event, it is clear to us that the "Management Rights" article of the agreement before us

cannot arguably be read as a residual clause committing everything not covered in the agreement to management's discretion. For that reason, *Amoco* is inapposite here.

In *Mock*, an employee brought suit against T.G. & Y. for invasion of privacy and intentional infliction of emotional distress resulting from an investigation conducted by T.G. & Y. into employee misconduct and the employee's subsequent termination. The Court held these claims preempted, reasoning as follows:

> Under the CBA, T.G&Y. could conduct such an investigation and could terminate any employee for "just cause." An analysis of whether T.G.&Y. acted properly or not will inevitably require an analysis of what the CBA permitted.

*Mock*, 971 F.2d at 530. Thus, in *Mock*, as in *Amoco*, provisions of the collective bargaining agreement could fairly be read to authorize the employer's conduct.

Finally, in *In re General Motors Corp.*, an employee brought suit against General Motors for invasion of privacy after General Motors, during the course of the employee's grievance proceeding, allegedly revealed that the employee had sought drug and alcohol abuse counseling through an employee assistance program prescribed by the applicable collective-bargaining agreement. Under the collective-bargaining agreement, such program participation was to remain confidential. The Court concluded that the duty of confidentiality alleged to have been violated arose from the collective-bargaining agreement, and the invasion of privacy claim was therefore completely preempted. Thus, the right allegedly violated – the right to confidential use of an employee drug and alcohol abuse counseling program – arose out of a collective-bargaining agreement and, accordingly, the plaintiff was necessarily relying on the terms of the labor contract. Appellants in our case have made no reference, nor need they make reference, to any provision of the CBA.

2.

Appellants also claim that Defendants committed the tort of invasion of privacy. "An action for invasion of privacy is comprised of four distinct torts: (1) intrusion upon seclusion, (2) appropriation of name or likeness, (3) publicity given to private life and (4) publicity placing the person in a false light." *Harris v. Easton Publishing Co.*, 483 A.2d 1377, 1383 (Pa. Super. Ct. 1984) (citing *Marks v. Bell Tel. Co. of Pa.*, 331 A.2d 424 (Pa. 1975); *Vogel v. W.T. Grant Co.*, 327 A.2d 133, 136 (Pa. 1974)). Although the state law complaint does not specify which privacy tort Appellants advance, the only cause of action arguably relevant to the interception of oral communications in this case is intrusion upon Appellants' seclusion. The Pennsylvania courts have defined this claim, in accordance with the *Restatement (Second) of Torts* (1977), as follows: "One

who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." *Harris*, 483 A.2d at 1383 (quoting *Restatement (Second) of Torts* § 652B). Like Appellants' Wiretap Act claim, this cause of action also requires that the plaintiff have a reasonable expectation of privacy. *See id.* ("The defendant is subject to liability under this section only when he has intruded into a private place, or has otherwise invaded a private seclusion that the plaintiff has thrown about his person or affairs." (citing *Restatement (Second) of Torts* § 652B cmt. c)).

With respect to Appellants' invasion of privacy claim, Dana and SGI present arguments identical to those they raise in favor of extinguishing the Wiretap Act claims – namely that the expectation of privacy issue and the "highly offensive to a reasonable person" issue must be determined in the light of the collective bargaining agreement. Again, based on *Trans Penn West,* we reject these arguments.

3.

As for Appellants' remaining tort claims – negligent or reckless supervision of Defendants' officers, agents, servants; negligent or reckless supervision of Defendants' premises or instrumentalities under their control; and failure to exercise reasonable care to protect Appellants as business invitees – Dana and SGI argue that we must find these claims completely preempted under *Electrical Workers (IBEW) v. Hechler*, 481 U.S. 851 (1987), and *Steelworkers v. Rawson*, 495 U.S. 362, 364 (1990).

Neither *Hechler* nor *Rawson* is applicable to Appellants' tort claims. In *Hechler*, an employee of Florida Power and Light Company sued her union after she was injured performing a repair to an electrical substation. The basis of her claim was that the union had breached a duty it assumed, pursuant to the relevant collective-bargaining agreement, to ensure that she would not be required or allowed to take undue risks in the performance of her duties which were not commensurate with her training and experience. The Court held that this claim was completely preempted by § 301 of the LMRA because it was not sufficiently independent of the collective-bargaining agreement. According to the Court, the plaintiff's tort claim was based on her allegation that her union owed her a duty of care, but "[u]nder common law . . . it is the *employer*, not a labor union, that owes employees a duty to exercise reasonable care in providing a safe workplace." *Id.* at 859. Accordingly, the Court reasoned, the plaintiff's "allegations of negligence assume significance if – and only if – the Union, in fact, had assumed the duty of care that the complaint alleges the Union breached." *Id.* at 861. In order to determine the union's tort liability, a court would have to examine the duty assumed by the union in the collective-bargaining

agreement and the scope of that duty. This, according to the Court, was precisely the type of contract interpretation that implicated the complete preemption doctrine. As in *Allis-Chalmers*, the Court held, the plaintiff was "precluded from evading the pre-emptive force of § 301 by casting her claim as a state tort action." *Id.*

Similarly, in *Rawson*, the plaintiffs, survivors of four miners who were killed in an underground mine fire, brought state law wrongful death actions against the deceaseds' union alleging that the deaths were caused by the union's fraudulent and negligent acts. The plaintiffs' claims were based on the contention that the union had, through a collective-bargaining agreement with the mine operator, caused to be established a management-labor safety committee. The plaintiffs argued that the union representatives had negligently performed inspections that the union had promised to conduct, failing to uncover obvious deficiencies. The Supreme Court, as in *Hechler*, again held that the wrongful death claim against the union was completely preempted. The Court noted that, like *Hechler*, the plaintiffs' pleadings indicated that the duty of care relied on as the basis of their tort suit was one allegedly assumed by the union in a collective bargaining agreement. The Court further reasoned:

> As we see it . . . , [the plaintiffs'] tort claim cannot be described as independent of the collective-bargaining agreement. This is not a situation where the Union's

delegates are accused of acting in a way that might violate the duty of reasonable care owed to every person in society. There is no allegation, for example, that members of the safety committee negligently caused damage to the structure of the mine, an act that could be unreasonable irrespective of who committed it and could foreseeably cause injury to any person who might possibly be in the vicinity.

> . . . If the Union failed to perform a duty in connection with inspection, it was a duty arising out of the collective-bargaining agreement signed by the Union as the bargaining agent for the miners. Clearly, the enforcement of that agreement and the remedies for its breach are matters governed by federal law. . . . Pre-emption by federal law cannot be avoided by characterizing the Union's negligent performance of what it does on behalf of the members of the bargaining unit pursuant to the terms of the collective-bargaining contract as a state-law tort.

*Id.* at 371-72. Accordingly, the Court

held, the plaintiffs' suit could only go forward under federal law.

In relying on *Hechler* and *Rawson*, Dana and SGI refuse to acknowledge that the duty of care in both of those cases was alleged to have arisen from a collective-bargaining agreement. In both of those cases, the unions, which did not otherwise have any duty of care under state law, were the defendants being sued. In this case, however, Appellants' claims did not invoke any duty of care prescribed by the CBA, and no consultation with the CBA is necessary in order to define the scope of the duties alleged to have been breached. Accordingly, whatever duties Dana was alleged to have had with respect to supervision its employees, agents and premises, or protection of business invitees, those duties are independent of the CBA. As such, Appellants' claims arising from negligent or reckless breach of those duties are not completely preempted by § 301 of the LMRA.

4.

Section 16 of New Jersey's Detective Act provides, in relevant part:

> It is unlawful for the holder of a license issued under this act, or for any employee of such licensee, knowingly to commit any of the following acts, within or without the Commonwealth of Pennsylvania: . . . to interfere with, restrain, or coerce employees in the exercise of their right to

form, join, or assist any labor organization of their own choosing, to interfere or hinder the lawful or peaceful collective bargaining between employees and employers, to pay, offer, or give any money, gratuity, favor, consideration, or other thing of value, directly or indirectly, to any person, for any verbal or written report of the lawful activities of employees in the exercise of their right of self-organization, to form, join, or assist labor organizations, and to bargain collectively through representatives of their own choosing, . . . .

Pa. Stat. Ann. tit. 22, § 26. In order to state a cause of action for civil conspiracy under Pennsylvania law, a plaintiff must allege: "(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage." *McGuire v. Shubert*, 722 A.2d 1087, 1092 (Pa. Super. Ct. 1998) (citing *Kadel v. McMonigle*, 624 A.2d 1059, 1063 (Pa. Super. Ct. 1993)).

Appellants' Detective Act conspiracy claim is not based on any right or duty created by the collective bargaining agreement, and litigation of that claim will not require interpretation of

that agreement. It necessarily follows that § 301 does not completely preempt this claim.

This conclusion is not inconsistent with *San Diego Building Trades Council v. Garmon*, 359 U.S. 236 (1959), and its progeny. It is true that to the extent Appellants assert that Defendants interfered with their rights to form, join, or assist a labor union, as well as their rights to collective bargaining, these claims appear to be preempted by §§ 7 and 8 of the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 157 and 158.[5]

This did not provide the District Court with subject matter jurisdiction, however.

In *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 244 (1959), the Supreme Court held that "[w]hen it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by § 7 of the National Labor Relations Act, or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield." Thus, §§ 7 and 8 of the NLRA may provide Defendants with a preemption defense to Appellants' claims under § 16 of the Detective Act upon remand to the state court. Such preemption, however, is not the type of *complete* preemption that would provide Defendants with a basis for federal question jurisdiction. *See Ethridge v. Harbor House Restaurant*, 861 F.2d 1389, 1396-1401 (9th Cir. 1988) (holding that "sections 7 and 8 [of the NLRA] do not confer original federal question jurisdiction on the federal district courts"); *United Ass'n of Journeymen & Apprentices of Plumbing & Pipe Fitting Indus., Local No. 57 v. Bechtel Power Corp.*, 834 F.2d 884, 886-87 (10th Cir. 1987) (same); *see also Caterpillar*, 482 U.S. at 392-93 (distinguishing between preemption as a defense to a state law claim and complete preemption as a basis for federal question jurisdiction).

---

[5]Section 7 of the NLRA provides:
> Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a)(3) of this title.

29 U.S.C. § 157. Section 8(a)(1) provides, in relevant part that "[i]t shall be an unfair

---

labor practice for an employer to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title." 29 U.S.C. § 158(a)(1).

## C.

In summary, Appellants' claims do not involve rights or duties created by the collective bargaining agreement. Nor do those claims raise "'questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement.'" *Livadas*, 512 U.S. at 122-23 (quoting *Lueck*, 471 U.S. at 211). Rather, our analysis indicates that the state laws invoked by Appellants confer upon them substantive rights that are independent of any rights available under the CBA. Under such circumstances, the Supreme Court has held, it would be inconsistent with Congress' intent under § 301 to find complete preemption. *See Allis-Chambers*, 471 U.S. at 212.

## III.

For the foregoing reasons, the judgment of the District Court will be vacated and this case will be remanded to the District Court with instructions to remand it to the Court of Common Pleas of Berks County, Pennsylvania.