FILED
U.S. Bankruptcy Appellate Panel
of the Tenth Circuit

May 19, 2026

Anne M. Zoltani
Clerk

NOT FOR PUBLICATION[1]

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE TENTH CIRCUIT

_____

| | |
|---|---|
| IN RE SEAN BREWER and VONN BURNETT, | BAP No. CO-25-022 |
| Debtors. | |
| _____ | |
| SEAN BREWER, | Bankr. No. 11-21667<br>Adv. No. 19-01343<br>Chapter 7 |
| Plaintiff - Appellant, | |
| v. | |
| INDIANA DEPARTMENT OF NATURAL RESOURCES, | OPINION |
| Defendant - Appellee. | |

_____

Appeal from the United States Bankruptcy Court
for the District of Colorado

_____

Submitted on the briefs.[2]

_____

Before **SOMERS**, **JACOBVITZ**, and **PARKER**, Bankruptcy Judges,

PER CURIAM.

_____

[1] This unpublished opinion may be cited for its persuasive value, but is not precedential, except under the doctrines of law of the case, claim preclusion, and issue preclusion. 10th Cir. BAP L.R. 8026-6.

[2] The parties did not request oral argument, and after examining the briefs and appellate record, the Court has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. Bankr. P. 8019(b). The case is therefore ordered submitted without oral argument.

_____

## I.        Background

On May 6, 2010, Appellant Sean Brewer and Appellee Indiana Department of Natural Resources entered into a settlement agreement (the "State Settlement") to resolve a dispute before the Indiana Natural Resources Commission ("NRC") involving some of Appellant's well permits. The State Settlement required Appellant to "plug and abandon" five of these wells ("Noncompliant Wells") by December 31, 2010.[3] The State Settlement also provided that failure to do so by the deadline would result in (i) the revocation of Appellant's well permits, (ii) an obligation to immediately plug and abandon the wells as required by Indiana state law, and (iii) a statutory lien in favor of the State of Indiana relative to the well for any permit deemed revoked for the casing and equipment located on or removed from the well site, the leasehold of the land where the well is located, and any crude oil on the well site or recovered at the time the well is plugged and abandoned.[4]

Additionally, Appellant was assessed civil penalties of $1,250.00 and $1,000 related to wells under permits 43785 and 50924 respectively on September 10, 2010. Appellant failed to bring the Noncompliant Wells into regulatory compliance by the agreed deadline. On January 31, 2011, Appellee sent a letter to Appellant notifying him that the Noncompliant Wells' permits were revoked.

---

[3] State Settlement at 5–6 in Appellant's Am. App. at 89–90.
[4] *Id.* at 6 in Appellant's Am. App. at 90.

On February 9, 2011, Appellee assessed a $500 civil penalty because of his failure to pay his annual well fee for the year 2010.[5] On May 17, 2011, Appellant filed a chapter 7 bankruptcy case and was granted a discharge on August 29, 2011. On September 25, 2012, Appellee filed an administrative complaint with the NRC requesting an order revoking Appellant's remaining permits.[6] Appellant failed to respond, and the NRC issued a final order of default on November 26, 2012 ("2012 Order") revoking the remaining permits and ordering Appellant to plug and abandon the wells that had previously been authorized by those permits.[7] In the alternative, the 2012 Order permitted Appellee to plug and abandon the wells with Appellant remaining liable for any associated costs.[8]

On November 26, 2013, Appellee filed a petition for civil enforcement in state court seeking enforcement of the State Settlement and the 2012 Order in order to compel Appellant to "plug, abandon and restore the areas around oil and gas wells, and to pay civil penalties and provide bonds."[9] On June 10, 2014, the state court entered a final order enforcing all terms in the State Settlement and the 2012 Order ("2014 Order"). Subsequently, Appellee plugged the wells associated with permits 35298, 47933, 50827,

---

[5] Appellee Affidavit at 2 in Appellant's Am. App. at 118.
[6] Stipulated Facts at 2 in Appellant's Am. App. at 109; *Complaint for the Issuance of an Order to Revoke Permits* in Appellant's Am. App. at 155.
[7] Stipulated Facts at 2 in Appellant's Am. App. at 109; *Final Order of Default* in Appellant's Am. App. at 240.
[8] Stipulated Facts at 2 in Appellant's Am. App. at 109; *Final Order of Default* at 2 in Appellant's Am. App. at 241.
[9] *Court's Final Order Enforcing the Administrative Settlement Agreement and Final Order of Default* at 1 in Appellant's Am. App. at 265; Stipulated Facts at 3 in Appellant's Am. App. at 110.

50924, and 50925 ("Plugged Wells") due to ongoing environmental problems on the surface of the wells as the result of failures of valves, piping, and other fixtures, which resulted in a total cost of $43,301.00.[10]

On November 13, 2019, Appellant filed a complaint for determination of dischargeability of a debt, which Appellee answered. On August 28, 2020, the parties filed the Stipulated Facts. Also on that date, Appellee filed a motion for summary judgment ("MSJ") arguing Appellant's obligations to plug and abandon the wells required by the State Settlement, the 2012 Order, and 2014 Order were not "claims" that could be discharged in bankruptcy because they constituted injunctive relief to ameliorate ongoing or future pollution.[11] Appellee requested a judgment in the amount of $46,051.00 and, in support, attached the Appellee Affidavit.[12] Appellant responded arguing (i) Appellee was raising defenses not asserted in its answer, (ii) the obligations arising out of the various orders issued against him were prepetition claims, and (iii) the civil penalties imposed against him were discharged by his discharge.[13] Also, on August 28, 2020, Appellant filed a motion for judgment on the pleadings or for summary

---

[10] Stipulated Facts at 3 in Appellant's Am. App. at 110; Appellee Affidavit at 2 in Appellant's Am. App. at 118.

[11] MSJ in Appellant's Am. App. at 113; *Memorandum of Law in Support of Defendant's Motion for Summary Judgment* in Appellant's Am. App. at 121; *Defendant's Designation of Materials in Support of its Motion for Summary Judgment* in Appellant's Am. App. at 143.

[12] Appellee Affidavit in Appellant's Am. App. at 117. The requested amount includes $2,750 in civil penalties and $43,301.00 for costs associated with plugging the Plugged Wells. *Id.* at 3–4 in Appellant's Am. App. at 119–20.

[13] *Plaintiff's Response to Defendant's Motion for Judgment* in Appellant's Am. App. at 310.

judgment.[14] On February 17, 2021, the Bankruptcy Court entered an order denying Appellant's motion for judgment on the pleadings and granting in part the MSJ ("SJ Order").[15]

In the SJ Order, the Bankruptcy Court reviewed Appellant's obligations under the State Settlement and found that Appellee had no right to payment from Appellant personally, as such, any obligations under the State Settlement were not claims and were not discharged. Next, the Bankruptcy Court reviewed Appellant's obligations under the 2012 Order and concluded that obligations incurred prepetition may be claims, but Appellant's obligation to pay Appellee's costs in plugging and abandoning wells—$43,301—was not a claim because it stemmed from "a cleanup order that accomplished the dual objectives of removing accumulated wastes and stopping or ameliorating ongoing pollution emanating from such wastes."[16] The Bankruptcy Court further ordered that the "remaining permits under the 2012 [ ] Order remain at issue and summary judgment as to such permits is denied accordingly."[17]

On July 29, 2025, the Appellee filed a Mutual Release and Motion to Dismiss in the adversary proceeding.[18] The Mutual Release and Motion to Dismiss consisted of (a) a section entitled Stipulated Facts in which Appellant and Appellee stipulated to thirty-one

---

[14] *Plaintiff's Motion for Judgment on the Pleadings and/or Summary Judgment on Complaint for Determination of Dischargeability of Debt* in Appellant's Am. App. at 276.

[15] SJ Order in Appellant's Am. App. at 336.

[16] *Id.* at 11 in Appellant's Am. App. at 346.

[17] *Id.* at 13 in Appellant's Am. App. at 348.

[18] Settlement Agreement in Appellant's Am. App. at 349.

paragraphs of facts and (b) a section entitled Agreements which is a settlement agreement between Appellant and Appellee predicated on the Stipulated Facts (the "Settlement Agreement").

In the Settlement Agreement, the parties noted that they resolved the remaining issues not resolved in the SJ Order and agreed that the Settlement Agreement was in full and complete settlement of disputed claims made to avoid litigation between the parties.[19] Appellee agreed to "void the [2012 Order] . . . and not enforce the findings."[20] Appellant agreed to "dismiss with prejudice the remaining claims in the Adversary Complaint and to take any and all other action necessary to carry out the purpose and intent of this Release and Agreement."[21] The parties further agreed that "the remaining issues from the 2012 [ ] Order and the 2014 Order are deemed to be discharged," and "the items" in the SJ Order "are no[t] discharged, per the Order."[22] Appellant's signature on the Settlement Agreement was notarized by a notary public. The Settlement Agreement was also signed and approved as to form and content by Appellant's counsel. Based on the Mutual Release and Motion to Dismiss, which included the Settlement Agreement, the Bankruptcy Court dismissed the adversary proceeding on July 31, 2025 ("Order Dismissing Case").[23] On August 14, 2025, Appellant appealed the Order Dismissing Case.

---

[19] *Id.* at 7 in Appellant's Am. App. at 355.
[20] *Id.* at 4 in Appellant's Am. App. at 352.
[21] *Id.* at 5 in Appellant's Am. App. at 353.
[22] *Id.*
[23] Order Dismissing Case in Appellant's Am. App. at 357.

## II.　　Jurisdiction

The BAP has jurisdiction to hear timely filed appeals from "final judgments, orders, and decrees" of bankruptcy courts within the Tenth Circuit, unless a party elects to have the district court hear the appeal.[24] No party elected to have the district court hear the appeal. Appellant timely filed his notice of appeal from the Order Dismissing Case, which is a final order.[25] Accordingly, this Court has jurisdiction over this appeal.

---

[24] 28 U.S.C. § 158(a)(1), (b)(1), (c)(1); Fed. R. Bankr. P. 8003, 8005.

[25] The Order Dismissing Case fully resolved all the claims in the adversary proceeding. The Order Dismissing Case does not explicitly state that the dismissal is with prejudice; rather, it states that the Bankruptcy Court grants the "Joint Motion to Dismiss," which requested dismissal with prejudice. Agreement at 5 in Appellant's Am. App. at 353. *See also In re Durability, Inc.*, 893 F.2d 264, 265–66 (10th Cir. 1990) ("[A]n order is final if it ends the litigation on the merits. . . . [T]he appropriate 'judicial unit' for application of these finality requirements in bankruptcy is . . . the particular adversary proceeding[.]"); *Concha v. London*, 62 F.3d 1493, 1507 (9th Cir. 1995) (holding a voluntary dismissal with prejudice is appealable); *Romoland Sch. Dist. v. Inland Empire Energy Ctr., LLC*, 548 F.3d 738, 750 (9th Cir. 2008) (treating "the dismissal as one with prejudice for purposes of creating appellate jurisdiction because this designation was consistent with the effect that . . . all the parties, intended the dismissal to have" (citation modified)).

### III.    Issues on Appeal

Appellant identifies six issues on appeal.[26] This Court reviews a bankruptcy court's factual findings for clear error, its legal conclusions de novo, and matters of discretion for abuse of discretion.[27]

### IV.    Discussion

Appellant's first five issues on appeal collectively challenge the SJ Order and his final issue challenges the Order Dismissing Case—Appellant contends the Settlement Agreement upon which dismissal was based is fraudulent and, therefore, void because the document Appellant signed differs from the version filed with the Bankruptcy Court.

Thus, apart from the sixth issue Appellant raises on appeal, Appellant is appealing from the Bankruptcy Court rulings in the SJ Order. Appellant and Appellee entered into a complete settlement of all issues in the adversary proceeding as set forth in the Settlement Agreement that included any issues relating to the SJ Order. By entering into the Settlement Agreement, Appellant expressly waived the right to challenge the SJ Order.[28]

---

[26] "1. The Appellant was not a debtor in possession of any oil and gas leases prior to the filing of his Chapter 7 petition, if he were, they would have been liquidated. . . . 2. There is evidence within the [Appellant's] bankruptcy petition that supports his claim that he sold the lease associated with permit numbers 35298, 50827, 50924 and 50925 and has no liability for these four permits. . . . 3. The bankruptcy court erred in its interpretation of *In re Chateaugay*. . . .4. Permit 47933 was not plugged due to ongoing pollution. 5. The bankruptcy court erred in ruling that the "Settlement Agreement" that is at the center of this case is not a claim subject to discharge. . . . 6. The MUTUAL RELEASE AND MOTION TO DISMISS is defective and should be deemed null and void." Appellant's Am. Br. at 3–4.

[27] *Pierce v. Underwood*, 487 U.S. 552 (1988); *In re Young*, 91 F.3d 1367, 1370 (10th Cir. 1996).

[28] *Torrez v. Pub. Serv. Co. of N.M., Inc.*, 908 F.2d 687, 689 (10th Cir. 1990). *See also* 15A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice*

Apart from Appellant's sixth issue on appeal, Appellant is foreclosed by the Settlement Agreement from challenging the SJ Order in this appeal.[29]

Appellant's sixth issue on appeal in effect argues that the Order Dismissing Case should be set aside because it was procured by a fraudulent Settlement Agreement. We may affirm the Bankruptcy Court on any basis supported by the record, including for reasons not presented to us in this appeal.[30] Although not argued by Appellee in this appeal, we conclude that Appellant cannot raise on appeal the issue of whether the Order Dismissing Case was procured by fraud without first seeking and obtaining a ruling from the Bankruptcy Court on that issue under Federal Rule of Civil Procedure 60(b)(3) ("Rule 60(b)(3)").

A request to set aside an order on the grounds it was procured by fraud is governed by Rule 60(b)(3), made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 9024.[31] A litigant may not seek relief under Rule 60(b)(3) for the

---

*and Procedure* § 3901 (3d ed. 2026) ("Although appeal is a matter of right, the right can be waived. . . . The most likely occasion for waiver in civil litigation arises from a settlement agreement that calls for resolution of some disputed matter by the district court, coupled with an explicit agreement that the district court decision shall be final and that all rights of appeal are waived.").

[29] A party to a consent judgment is deemed to have waived any objections it has to matters within the scope of the judgment. *Mock v. T.G. & Y. Stores Co.*, 971 F.2d 522, 526 (10th Cir. 1992). An exception to this general rule is where the consent judgment was procured by fraud. *Id*. at 526 n 5. As discussed below, for Appellant to rely on that exception on appeal, Appellant must appeal an adverse ruling from the Bankruptcy Court on whether the Order Dismissing Case was procured by fraud.

[30] *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1130 (10th Cir. 2011) ("We have long said that we may affirm on any basis supported by the record, even if it requires ruling on arguments not reached by the district court or even presented to us on appeal.").

[31] Fed. R. Bankr. P. 9024 ("Fed. R. Civ. P. 60 applies in a bankruptcy case.").

first time on appeal.[32] Rather, the issue must first be presented to the court in which the alleged fraud was perpetrated.[33] Appellate courts do not make findings of fact. Instead, the trial court "is the forum charged with the duty of determining questions of fact."[34]

Because the Bankruptcy Court entered the Order Dismissing Case based on the Settlement Agreement, only the Bankruptcy Court can in the first instance make findings of fact and grant relief from the Order Dismissing Case under Rule 60(b)(3) on the grounds that the Order Dismissing Case was procured by a fraudulent Settlement Agreement, not this Court. Any argument that the Order Dismissing Case should be set aside because it was procured by fraud is not properly before this Court. Absent Appellant obtaining a ruling from the Bankruptcy Court under Rule 60(b)(3), Appellant has forfeited any argument that the Order Dismissing Case should be overturned on appeal because it was procured by fraud.

Finally, Appellant's remaining challenges to the SJ Order are moot. "Under the constitutional-mootness doctrine, a federal court has jurisdiction over only 'cases' and 'controversies.'"[35] The central inquiry in determining whether a "controversy" exists is whether there is an "occasion for meaningful relief"[36] or whether granting a present

---

[32] *MacArthur v. San Juan Cnty.*, 495 F.3d 1157, 1161 (10th Cir. 2007) ("We find no indication in the record that the Plaintiffs raised a fraud on the court claim in the district court, dooming their argument to failure.").

[33] *Id.*

[34] *Leasehold Expense Recovery, Inc. v. Mothers Work, Inc.*, 331 F.3d 452, 463 (5th Cir. 2003).

[35] *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1121 (10th Cir. 2010) (quoting U.S. Const. art. III, § 2, cl. 1).

[36] *Rio Grande*, 601 F.3d at 1122 (quoting *S. Utah Wilderness All. v. Smith*, 110 F.3d 724, 727 (10th Cir. 1997)).

determination of the issues will have some effect in the real world.[37] Here, the Court could only grant meaningful relief if the Order Dismissing Case were reversed and the adversary proceeding reinstated. As discussed above, the Court declines to consider Appellant's argument for reversal of the Order Dismissing Case based on a fraudulent Settlement Agreement. Thus, there is no meaningful relief that this Court can grant with respect to the SJ Order.

## V.     Conclusion

Because we may affirm on any basis supported by the record even if it requires ruling on arguments not presented to us on appeal, the Court affirms the Bankruptcy Court for the reasons stated above without prejudice to Appellant requesting Rule 60(b) relief from the Bankruptcy Court with respect to the Order Dismissing Case following issuance of this Court's mandate.

---

[37] *In re Railyard Co., LLC*, 849 F. App'x 227, 229 (10th Cir. 2021) (unpublished) (concluding appeal was constitutionally moot because there was no form of real-world relief that could be offered).